Marshall FRUMER, Joyce Caplan, Joan Johnston, Appellants,

v.

CHELTENHAM TOWNSHIP, Board of Commissioners of Cheltenham Township, Nicholas D. Melair, Jr.

No. 82–1598.

United States Court of Appeals, Third Circuit.

Argued June 1, 1983.

Decided June 17, 1983.

Michael A. Etkin (argued), Frumer & Etkin, Philadelphia, Pa., for appellants.

Gilbert P. High, Jr. (argued), High, Swartz, Roberts & Seidel, Norristown, Pa., for appellees.

Before GIBBONS and BECKER, Circuit Judges and WEBER, District Judge *.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Marshall Frumer, Joyce Caplan and Joan Johnston, residents of Cheltenham Township, Pennsylvania, appeal from an order denying their motion for a preliminary injunction against the enforcement of a township ordinance which provides:

> No temporary sign shall be affixed to utility poles, street signs or any other structures within the rights-of-way of public streets or highways within the Township of Cheltenham.

* Hon. Gerald J. Weber, United States District Judge for the Western District of Pennsylvania,

They contend that the ordinance violates rights guaranteed by the first and fourteenth amendments. The district court, 545 F.Supp. 1292, denied a preliminary injunction on the ground that because the ordinance appeared to be a content-neutral time, place, and manner regulation, the plaintiffs had little likelihood of success under these facts on the merits. This appeal followed. The township officials contend that the appeal should be dismissed as moot. We hold that the appeal is not moot, and we affirm.

## I. Mootness

The challenged ordinance was enacted by the Cheltenham Board of Commissioners on March 16, 1982 over the opposition of the plaintiffs and others. Frumer was then a candidate in the Democratic primary election, scheduled for May of 1982. Johnston was co-chairperson of the Cheltenham Democratic Committee, and Caplan a member of that committee. The opposition also included members of charitable organizations. The May primary took place before the hearing on plaintiffs' preliminary injunction motion. The general election took place in November, after the notice of appeal was filed.

The township officials contend that since the November election has passed, and it was in connection with that election that the plaintiffs intended to post temporary signs, the case is moot insofar as it seeks preliminary injunctive relief. Obviously, however, the Democratic Committee survives from one election to another, and has a continuing interest in the controversy. The issue posed by the complaint is one "capable of repetition, yet evading review," *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The immediate need for an injunction may have evaporated, but there is a reasonable expectation that the same parties will be subject to the same action again. *Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71

sitting by designation.

L.Ed.2d 353 (1982); *United States v. Criden,* 675 F.2d 550, 553–54 (3d Cir.1982).

The township officials recognize that the case is not moot, since the trial court must still decide it at final hearing. They urge, however, that we should, for purposes of 28 U.S.C. § 1292(a), recognize a separate mootness category: mootness of the immediacy of irreparable harm. No authority has been called to our attention which introduces such further complication to the already unduly complex law of justiciability. The absence of immediately threatened harm from application of the ordinance to the plaintiffs certainly is one factor to be taken into account in determining whether to grant a preliminary injunction. It is, however, a factor going to the merits of such relief, not to the justiciability of the controversy. Thus we hold that the appeal is justiciable.

## II. The Merits of the Denial of a Preliminary Injunction

■ When reviewing the grant or denial of preliminary injunctive relief, we may reverse the district court only if that court abused its discretion, erred in stating or applying the law, or clearly mistook the facts. *Punnett v. Carter,* 621 F.2d 578, 582 (3d Cir.1980). The district court must be guided in its decision by (1) whether the party requesting relief has a reasonable probability of succeeding on the merits of his claim and (2) whether that party will be irreparably injured *pendente lite* if no preliminary injunction is forthcoming. *Id.*[1] This latter inquiry is somewhat akin to that made in determining whether this appeal is moot. Not surprisingly, the district court found that such injury would occur. Appendix at 127 n. 4. It held, however, that plaintiffs had little, if any, chance of prevailing on the merits since the ordinance is a valid time, place and manner regulation.

■ Valid time, place and manner regulations are an exception to the first amendment protection of certain forms of speech. Such regulations impose a slight burden on speech in the interests of another public good. Since such a rationale might be proffered in justification of all types of limitations on speech, a regulation will be deemed valid under the time, place, and manner exception only if it meets certain criteria. According to the Supreme Court, "[w]e have often approved restrictions of that kind provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976); *see also Metromedia, Inc. v. San Diego,* 453 U.S. 490, 515–16, 101 S.Ct. 2882, 2896–97, 69 L.Ed.2d 800 (1981); *Linmark Associates, Inc. v. Willingboro,* 431 U.S. 85, 93–94, 97 S.Ct. 1614, 1618–19, 52 L.Ed.2d 155 (1977). The *Virginia Pharmacy* case itself involved restrictions on commercial speech, a form perhaps less protected by the first amendment than the political speech at stake here. But the test articulated in *Virginia Pharmacy* is not that applicable to commercial speech but to public debate. See cases cited at 425 U.S. 771, 96 S.Ct. 1830.[2] As noted by this court, "it is undisputed that even speech entitled to the highest First Amendment protection may be subject to reasonable time, place and manner regulations that are content-neutral, serve a significant governmental interest, and that leave open ample alternative channels for communication of the information." *American Future Systems, Inc. v. Pennsylvania State University,* 688 F.2d 907, 915 (3d Cir.1982) (citing to *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647–48, 101 S.Ct. 2559,

---

1. Other relevant considerations include whether the grant or denial of relief will harm others and whether such relief is in the public interest. *Id.*

2. This point is emphasized in the sentence following that cited in the text, which begins: "Whatever may be the proper bounds of time, place, and manner restrictions on commercial speech. . . ."

2563–64, 69 L.Ed.2d 298 (1981), *cert. dismissed,* —— U.S. ——, 103 S.Ct. 583, 74 L.Ed.2d 941 (1982)).

Plaintiffs have relied on several Ninth Circuit cases—particularly *Taxpayers for Vincent v. Members of the City Council,* 682 F.2d 847 (9th Cir.1982), *prob. juris. noted,* —— U.S. ——, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983)—which have announced additional criteria for the application of the time, place, and manner exception. In *Taxpayers for Vincent* the Ninth Circuit addressed the constitutionality of an ordinance much like the one in issue here. Instead of discussing whether there were ample alternatives to the type of expression banned by the statute, the court inquired whether the ordinance was the least drastic means of protecting the governmental interests it served. 682 F.2d at 852–53.[3] This latter inquiry is a heightened form of judicial scrutiny under which the likelihood that a regulation will be upheld is decreased. *See, e.g., Widmar v. Vincent,* 454 U.S. 263, 276, 102 S.Ct. 269, 277, 70 L.Ed.2d 440 (1981).

The least restrictive means test advanced in *Taxpayers for Vincent* was considered by this court in *Tacynec v. City of Philadelphia,* 687 F.2d 793 (3d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 819, 74 L.Ed.2d 1016 (1983), and rejected. At issue in *Tacynec* was the validity of a limitation on the number of entrants in the Philadelphia Mummers Parade. In ruling that the ordinance was unconstitutional, the district court had applied the *Taxpayers for Vincent* criteria for valid time, place and manner regulation. 687 F.2d at 797. The court reversed, stating that the position of the Supreme Court on this issue is clear and citing *inter alia Heffron, Linmark Associates* and *Virginia Pharmacy. Id.* at 797–98. According to the *Tacynec* panel, the least restrictive means test is traditionally used only when the regulation in question is content-oriented, since then the dangers inherent in government support of one point of view relative to another justify the most exacting judicial scrutiny. *Id.* at 798.

■ Given that *Tacynec* is the law of this circuit, the district court obviously did not err in its formulation of the criteria under which the ordinance might be considered a valid time, place and manner regulation. Nor did the court err in its application of these criteria. The ordinance is certainly facially content-neutral since it does not discriminate among the types of speech or the content of the messages which might be found on temporary signs. Plaintiffs claim that since the public hearings on the ordinance primarily concerned its effect on political speech, the ordinance is actually content-oriented. The district court based its determination of content-neutrality, however, on the findings that the debate at the public hearings was initiated by those with a political axe to grind and that the Board of Commissioners had sent notice of the proposed ordinance to a wide variety of organizations. Appendix at 129–30. Since these findings are far from clearly erroneous, the court's determination of content-neutrality binds this court.

Plaintiffs challenge as well the district court's conclusion that the ordinance serves significant governmental interests in traffic safety and community aesthetics. The Supreme Court has not required that this fact be established by empirical data, as implied by plaintiffs in their citation to *John Donnelly & Sons v. Campbell,* 639 F.2d 6 (1st Cir.1980), *aff'd mem.,* 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981). Instead, the legislative judgment that such goals are advanced by an ordinance is deferred to unless it is facially unreasonable. *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 507–08, 101 S.Ct. 2882, 2892–93, 69 L.Ed.2d 800 (1981). Again the plaintiffs' reliance on such cases as *Taxpayers for Vincent* is mistaken since the Ninth Circuit erroneously assumed that the Supreme Court required a

---

**3.** Although the ordinance failed to satisfy this criterion, the court did not hold the ordinance to be invalid per se. Rather the court believed that in light of the first amendment interests at stake, the city should try a less comprehensive form of regulation. In the event that such regulation proves ineffective, the city may decide to reenact the ordinance and have it considered by the court in the context of its less successful forms. 682 F.2d at 853 & n. 7.

878

detailed empirical showing that the regulation in issue actually advanced the asserted governmental interests. Moreover, even if the Ninth Circuit had merely ruled that it was unreasonable for the city to assume that the posting of signs on certain property would pose a safety or aesthetics problem, *see, e.g.,* 682 F.2d at 852, this would not control the district court's findings in a different factual context.[4] The court's findings, Appendix at 132–33, are certainly not clearly erroneous, and the Board of Commissioners cannot be said to have acted unreasonably in hoping that the ordinance would promote traffic safety and community aesthetics.

Finally, plaintiffs contend that the district court erred in holding that ample alternative forms of communication are available to plaintiffs. In so concluding, the district court pointed to the distribution of leaflets and the use of bumper stickers. The court also noted that since the ban applied only to utility poles, street signs and any other structures,[5] plaintiffs are free to post signs on trees and other natural objects in the rights of way. Plaintiffs find this small consolation since they claim that Cheltenham does not have a significant number of trees abutting the rights of way. Regardless of the ultimate propriety of such a holding on the *merits* of plaintiffs' case, however, the district court was concerned with predicting the likelihood that plaintiffs *would succeed on those merits.* In that context, the existence of alternative forms of communication which are at least arguably as effective as signs and which require little more effort or money indicates that plaintiffs are not likely to prevail with their objection to the number of trees abutting the rights of way.

4. The ordinance in *Taxpayers for Vincent* banned signs on many more objects than those mentioned in the ordinance here, *see* 682 F.2d at 849, and since these additional objects did not function as traffic controls the posting of signs on them would not normally interfere with traffic.

5. According to the Cheltenham Township Sign Code:

### III. Conclusion

Since plaintiffs have little chance of successfully challenging the validity of the ordinance as a time, place, and manner regulation, the denial of the preliminary injunction must be affirmed.

"Structure" shall mean a combination of materials assembled at a fixed location to give support or shelter, such as a building, bridge, trestle, tower, framework, retaining wall, tank, swimming pool, tunnel, tent, stadium, reviewing stand, platform, bin, fence, sign, flagpole, or the like, including any construction of any kind affecting or endangering life or property.
Appendix at 135.