**CONSUMER PARTY, Max Weiner, Lance Haver, William Thorn, and Lisa Brannan, Appellants,**

v.

**William R. DAVIS, Secretary of the Commonwealth of Pennsylvania, Richard Anderson, Bureau of Legislation, Commissions and Elections, Margaret Tartaglione, Marian Tasco, and John Kane, Commissioners of the City of Philadelphia, Appellees.**

No. 85–1219.

United States Court of Appeals, Third Circuit.

Argued Oct. 21, 1985.

Decided Nov. 27, 1985.

David Kairys (argued), Kairys & Rudovsky, Stefan Presser, American Civil Liberties Union, Philadelphia, Pa., for appellants.

Leroy S. Zimmerman, Atty. Gen., Carl Vaccaro (argued), Deputy Atty. Gen., Andrew S. Gordon, Sr. Deputy Atty. Gen., Allen C. Warshaw, Chief Deputy Atty. Gen., Ralph J. Teti, Divisional Deputy City Sol., Pamela Foa, Deputy City Sol., Philadelphia, Pa., for appellees.

Before GARTH, BECKER, and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Legislators, sharing the human qualities of their constituents, do not always foresee when legislation designed to solve a particular problem may create an equally serious problem. Such was the case when the Pennsylvania General Assembly, in an effort to solve the "ballot clutter" problem on Democratic Party primary election ballots in Philadelphia,[1] amended the Pennsylvania Election Code to increase markedly the number of signatures necessary to secure a place on the primary ballot of a political party. 25 P.S. § 2872.1 (referred to hereinafter as Act 190). In passing Act 190, the legislature unwittingly but effectively barred political parties with few registered members from nominating candidates for the primary election. Moreover, because primary nomination is the only route available for members of political parties to attain general election ballot access, 25 P.S. § 2862, small parties, unable to nominate candidates for the general election ballot, are deprived of meaningful participation in the political process.

This action was brought in the district court for the Eastern District of Pennsylvania by the Consumer Party and its members (appellants).[2] The complaint alleges that Act 190 deprives appellants of a primary election and that, in conjunction with other provisions of the Election Code, deprives them of general election ballot access, all in violation of appellants' first amendment rights. After hearing the matter on an emergency basis, and acknowledging the merits of appellants' claims, the district court elected to afford relief without declaring the Pennsylvania statutory scheme unconstitutional. The court thus denied the preliminary injunctive relief

sought by plaintiffs,[3] but through an intricate interpretation of the statutory scheme, provided that the Consumer Party could attain access to the general election ballot by nominating as a political body, while otherwise retaining its status as a political party. Even though the district court thus granted them affirmative relief, appellants vigorously object to the chosen remedy, hence this appeal.

For the reasons that follow we shall vacate the district court's order and remand the case for further and expedited proceedings consistent with this opinion.

## I. THE STATUTORY SCHEME

The Pennsylvania Election Code divides political entities that sponsor candidates for public office into two categories: political parties and political bodies. 25 P.S. § 2831. Party status is attained by achieving a certain degree of success in the previous election in accordance with a complex numerical formula. 25 P.S. § 2831(a), (b). All political groups that are not political parties are political bodies.

There are several advantages to party status. For example, parties, but not bodies, are listed on all voter registration forms. Parties can designate candidates by certification in special elections, whereas bodies must use the cumbersome signature-gathering process to nominate candidates for such elections. Parties also enjoy much more prestige in the eyes of the media and public. The most significant difference between parties and bodies, however, is the method by which they nominate candidates for the general election. Parties are required to nominate by primary election. 25 P.S. § 2862. Party members aspiring to get on the primary election ballot must submit nominating pe-

---

1. The problem was quite serious. In the May 15, 1979 special primary election in Philadelphia, for example, there were 101 candidates on the Democratic ballot for councilman-at-large. Such ballot clutter confuses voters, makes it difficult for them to spot their favored candidates' names and creates an inordinate and unfair advantage for the candidates near the top of the ballot.

2. Defendants include the Commonwealth of Pennsylvania and the Commonwealth and City of Philadelphia commissioners of elections.

3. For purposes of appellate jurisdiction, the parties agree that the district court's order was a denial of a preliminary injunction, appealable under 28 U.S.C. § 1292(a)(1) (1982).

titions signed within a limited time frame by a statutorily mandated number of registered members of their party. 25 P.S. §§ 2872.1, 2873. Political bodies, by contrast, are not permitted to nominate by primary. Rather, they are required to nominate by petition; nominees then go directly on the general election ballot. 25 P.S. §§ 2911, 2936. These nominating petitions may be signed by registered voters of any party. The number of required signatures is determined by different formulae and varies according to the number of votes cast in previous elections.

Before Act 190 was passed, the signature requirements for primary ballot access were minimal.[4] Although, as noted, the number of signatures required for political body nomination varies from election to election, prior to the passage of Act 190 the signature requirements for political bodies were invariably far more onerous than the signature requirements for political party primary ballot access. For example, to qualify any candidate for statewide office in 1984, a political body had to collect 49,000 signatures, while a political party needed only 500 signatures of its registered members to nominate candidates for the primary (with the primary winner automatically getting on the general election ballot).

Act 190 substantially increased the number of signatures required for primary election ballot access for political parties.[5] The new signature requirements imposed by Act 190 make it difficult or impossible for the Consumer Party to place candidates on the primary ballot[6]. Consumer Party candidates for the office of Philadelphia City Controller, for example, who previously had to acquire 100 signatures to get on the primary ballot, must now acquire 1,000. Because there are roughly 1400 Consumer Party members in Philadelphia, to get on the primary ballot a Consumer Party City Controller candidate must acquire the signatures of almost 70% of the party members, an undertaking conceded by all the parties to be virtually impossible.[7]

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

For many years, the Consumer Party nominated as a political body, obtaining the requisite numbers of signatures on nominating petitions. In 1982, the party finally achieved enough electoral success to become a statewide political party, thus enabling it to devote less time to acquiring signatures and more time to campaigning and other party activities. Shortly thereafter, the Pennsylvania legislature passed Act 190. Under Act 190, for election to some offices the number of required signatures for primary ballot access exceeds the number of Consumer Party members; hence the Consumer Party is automatically prevented from having a candidate on the

---

**4.** President and U.S. Senate ......... 100 signatures in each of ten counties

State Senator ................................ 200

Statewide office ................ 100 in each of five counties

State legislature .............................. 100

City-wide office ............................. 100 (first-class cities)

25 P.S. § 2872 (repealed 1985).

**5.** The new signature requirements include:

President and U.S. Senate .................... 2,000

State-wide offices ........................... 1,000 (at least 100 from each of 5 counties)

State legislature ............................... 300

State Senator ................................... 500

City-wide offices ........................... 1,000 (first class cities)

25 P.S. § 2872.1.

**6.** The actual number of signatures required for primary ballot access remains fewer than the signatures required for a political body to place a candidate on the general election ballot. As primary nominating petitions may be signed only by party members, however, the Consumer Party apparently has even more difficulty placing candidates on the primary ballot now than it had placing candidates on the general election ballot in its days as a political body.

**7.** It is common knowledge that it is difficult to

primary ballot.[8] Even where the required number of signatures does not exceed the number of Consumer Party members, it may represent such a large portion of Consumer Party members that it will be virtually impossible for the party to place a candidate on the primary ballot. *See supra* at 143. Where the Consumer Party has no candidates on the primary ballot, it can nominate no candidates for the general election ballot.

Moreover, even where the Consumer Party can field a primary candidate, it will be unable to have more than one. Because the number of signatures required by Act 190 will be a very high percentage of the number of Consumer Party members in virtually every election, and because individuals may sign but one petition for each office, 25 P.S. § 2868, the Consumer Party could have, at most, one candidate on its primary ballot. Thus Act 190 deprives Consumer Party members of a contested primary.

### B. *Procedural History*

On February 15, 1985, appellants filed a complaint and a motion for a preliminary injunction striking down Act 190 as unconstitutional either facially or as applied to them. The complaint alleged that Act 190 unconstitutionally deprived them of a primary and also that, in conjunction with the statutory requirement that parties must nominate for the general election by primary, the Act deprives them of general election ballot access. Defendants answered on February 25, denying any unconstitutionality, and on March 1, the district court held a hearing.[9] On March 12, the district court entered an order upholding the constitutionality of Act 190, but retaining jurisdiction to ensure that members of the Consumer Party would have access to the general election ballot through the political body nominating procedure.[10] On March 26, the district court filed a memorandum of decision, 606 F.Supp. 1008 (E.D.Pa.1985), noting its jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(1), (3), (4), and explaining the grounds for its order. Because the district court's order is terse, it can be understood only in conjunction with the court's opinion.

### III. *THE DISTRICT COURT'S OPINION*

The district court's opinion first canvassed the Pennsylvania statutory scheme and the voting rights case law, and then applied the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983) to each of the Consumer Party's claims. This test requires the court to consider the character and magnitude of the asserted injury, the interests advanced by the State to justify the burden imposed by its statute, and the extent to which those interests make it necessary to burden the plaintiff's rights. *Id.* at 789, 103 S.Ct. at 1570. The district court held that while Act 190 effectively denied Consumer Party a meaningful pri-

---

secure signatures on nominating petitions. First, people are reluctant to sign petitions for candidates unknown to them. In addition, party members may be geographically dispersed or not at home when those circulating the petition arrive.

**8.** For example, while all city-wide elections require 1,000 signatures, Philadelphia is the only city in which the Consumer Party has over 1,000 members. Thus the Consumer Party cannot field a primary candidate for any city-wide elections outside of Philadelphia.

**9.** The hearing, conducted on an emergency basis because the nomination process for the May 21, 1985 primary was shortly to conclude, consisted primarily of the testimony of two witnesses: Max Weiner, a founder of the Consumer Party, and Frederick Voigt, executive director of the Committee of 70, a private civic organization that monitors the Philadelphia electoral process.

**10.** The court's order read as follows:
1. Plaintiff's motion is DENIED.
2. Nothing in this Order is intended to effect a change in the current status of the Consumer Party. Defendants are enjoined from removing the Consumer Party name from the primary election ballot or preventing party members from voting by write-in or sticker.
3. This court retains continuing jurisdiction to ensure that *members* of the Consumer Party may have access to the general election ballot through the political body nominating procedure. (emphasis in original)

mary, the important state interest in reducing ballot clutter was sufficient to justify the restriction on plaintiffs. However, the court found that Act 190, in conjunction with the apparent requirement that political parties nominate only by primary, would unconstitutionally deny the Consumer Party and its members general election ballot access.

The Consumer Party had argued that the appropriate remedy was to invalidate Act 190, at least as to the Consumer Party, and to reinstate the previous signature requirements for primary ballot access. As we have noted, the court chose instead to uphold Act 190 but to reinterpret several provisions of the Election Code so as to permit the Consumer Party to use the nominating procedure statutorily reserved for political bodies while remaining a political party for all other purposes. The court's means of accomplishing this was to interpret the Pennsylvania Election Code to accommodate three types of political entities: parties, bodies and party/body hybrids that nominate like bodies but are otherwise like parties. This exercise, in turn, required the district court to interpret certain statutory provisions that seem to apply to all political parties as applying only to those political parties that are able to have a primary election.

The district court reinterpreted 25 P.S. §§ 2862, 2911, and 2936, which set out the methods for political parties and bodies to nominate candidates. Section 2862 states that "All candidates of political parties ... shall be elected at primaries." Section 2911 sets out in detail the process by which political bodies may nominate candidates. § 2936 together with § 2911(e)(6) prevent nominations of political party members in the name of political bodies. These provisions, in conjunction with the Election Code's definition of political parties and political bodies, 25 P.S. § 2831(a), (b), establish a dual system of political bodies and political parties, with no provision for hy-brid entities that are treated as parties for some purposes and bodies for other purposes. Yet, in its efforts to save the constitutionality of the scheme and to reach a sensible result, the district court created such an entity.

Specifically, the district court interpreted § 2862's requirement that parties nominate by primary as "refer[ring] only to parties able to meet the legal requirements for a primary." 606 F.Supp. at 1021. Similarly, the district court interpreted § 2936 as applying only to the nomination of candidates who were members of a "party holding a primary." *Id.* at 1022. In addition, the district court found it necessary to recast § 2911(e)(6) which requires candidates using the nominating procedure of political bodies to file an affidavit stating "that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party thirty days before the primary held prior to the general or municipal election in that same year." The district court stated that this provision must be interpreted to read "that in the case where he is a candidate for election at a general or municipal election, he was not a registered and enrolled member of a party *nominating candidates in the primary* thirty (30) days before *that party's* [the] primary held prior to the general or municipal election in that same year." (emphasis in original) 606 F.Supp. at 1022. The district court's interpretation required it to add the underlined words and delete the bracketed word.

Having interpreted the Pennsylvania Election Code to accommodate a party/body hybrid, the district court's order permitted Consumer Party to nominate as a body while stipulating that it would remain a party for all other purposes.

## IV. *THE ISSUES ON APPEAL*

■ The appeal concerns only the appropriateness of the district court's remedy.[11] The defendants have not cross-appealed.

---

**11.** As we have noted, the district court found a probability of success on the merits, though it denied the preliminary injunction.

Appellants allege that the district court abused its equitable discretion because, rather than relying on the common remedy of invalidating the challenged statute (at least as applied), the district court chose a remedy involving serious incursions into the state electoral scheme. Appellants also allege that the order is too vague to assure that the Consumer Party will be treated as a party for all purposes other than the procedure for nominating candidates. Appellees respond that the district court's remedy was well within its broad equitable discretion.[12]

■ While a district court has wide discretion in fashioning a remedial injunction, such discretion is not without constraints. *Ruiz v. Estelle,* 679 F.2d 1115, 1144–45 (5th Cir.1982). Prominent among these restraints is the principle of federalism: "federal courts in devising a remedy must take into account the interests of state and local authorities in managing their own affairs ..." *Milliken v. Bradley,* 433 U.S. 267, 280–81, 97 S.Ct. 2749, 2757–58, 53 L.Ed.2d 745 (1977); *see also Union County Jail Inmates v. Di Buono,* 713 F.2d 984, 1001

(3d Cir.1983). The district court, properly motivated by concerns of federalism and comity, sought the remedy that least intruded upon state policy. *Upham v. Seamon,* 456 U.S. 37, 43, 102 S.Ct. 1518, 1522, 71 L.Ed.2d 725 (1982); *Whitcomb v. Chavis,* 403 U.S. 124, 160, 91 S.Ct. 1858, 1877, 29 L.Ed.2d 363 (1971). Its order, entered on an emergency basis after only a preliminary hearing, may indeed have presented a satisfactory interim solution for the November election. In evaluating its propriety, however, we must consider the extent to which its continued effect could intrude upon state policy.

■ There are a number of critical problems with the court's order and memorandum of decision. First, the court's remedy required the reinterpretation of various provisions of the Pennsylvania Election Code in apparent defiance of the plain language of those sections. It was appropriate for the district court to prefer an interpretation that preserved the constitutionality of the statutory scheme, *United States v. Clark,* 445 U.S. 23, 27, 100 S.Ct. 895, 899, 63 L.Ed.2d 171 (1980) and produced a

---

**12.** Appellees also argue that inasmuch as the elections (primary and general) that gave rise to the request for a preliminary injunction have now passed, the case is moot. We find, however, that the case is not moot because the effect of the district court's order remains. New elections are upcoming—petitions may be circulated for the 1986 primary commencing March 13—and if a full hearing has not been completed and a decision handed down in time, the district court's opinion and order would appear to apply to future elections. Under the circumstances, the district court's order is not moot. *See, e.g., Costle v. Pacific Legal Foundation,* 445 U.S. 198, 210, 100 S.Ct. 1095, 1103, 63 L.Ed.2d 329 (1980) (case concerning the propriety of an EPA permit not moot even though the permit had expired, because "the terms of the permit ... have remained in effect, both through the Court of Appeals' stay and by operation of law.")

Alternatively, the case is not moot because it is "capable of repetition yet evading review." *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969). In *Moore,* a special three judge panel in an Illinois district court rejected plaintiff's ballot request for declaratory relief placing them on the ballot, and the case reached the Supreme Court after the 1968 election had passed. The Court rejected the claim of mootness:

"But while the 1968 election is over, the burden ... allowed to be placed on the nomination of candidates for statewide offices remains and controls future elections, as long as Illinois maintains her present system as she has done since 1935. The problem is therefore 'capable of repetition, yet evading review.' [citation omitted] The need for its resolution thus reflects a continuing controversy." *Id.* at 816, 89 S.Ct. at 1494.

Similarly, in *Frumer v. Cheltenham Township,* 709 F.2d 874 (3d Cir.1983), we held that the question of the constitutionality of an ordinance prohibiting the posting of certain campaign signs was not moot even though the election in which plaintiff wished to post signs had passed. We noted that there was a "reasonable expectation that the same parties will be subject to the same action again." *Id.* at 875.

Appellees do not deny the likelihood that appellant "will again be subjected to the alleged illegality." *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 1669, 75 L.Ed.2d 675 (1983). Rather, it argues that the "capable of repetition yet evading review" doctrine does not apply because the district court's order merely denied a preliminary injunction, and the case will now have to go to final hearing. However, we rejected that same argument in *Frumer,* which also involved the denial of a preliminary injunction.

sensible result. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982). These canons of statutory construction, however, do not give a court license to rewrite a statutory scheme and "create distinctions where none were intended." *Id.* at 71 n. 6, 102 S.Ct. at 1539. *See also Hynes v. Mayor And Council Of Borough Of Oradell,* 425 U.S. 610, 622, 96 S.Ct. 1755, 1761, 48 L.Ed.2d 243 (1976). An interpretation contrary to the plain meaning of a statute is justifiable only in the presence of clear indications of legislative intent, *Escondido Mutual Water Company v. La Jolla,* 466 U.S. 765, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 n. 6 (1984).

It seems doubtful to us that the legislature intended there to be hybrid party/body entities. Although the district court implied that the legislature could not have intended to craft a legislative scheme that leaves small parties in potential limbo, it is quite likely that the legislature, both in creating the original party-body scheme and in passing Act 190, did not foresee the possibility of parties having insufficient members to have a primary. Perhaps a full hearing, and further research and briefing, will establish that the legislature did intend flexibility in its body/party scheme. There is no evidence to that effect on the record, however, and in the absence of such evidence a federal court should be reluctant to abolish Pennsylvania's dual scheme. *See Paskel v. Heckler,* 768 F.2d 540, 543 (3d Cir.1985) ("[C]lear statutory language places an extraordinarily heavy burden on the party who seeks to vary it by reference to legislative history.").

A second problem with the district court's solution is that it creates several significant uncertainties. For example, the order seems to permit only members of parties "not able to participate in the primary election" to utilize the body nominating procedure. The order leaves unexplor-ed and quite problematic the standard for determining when a party is unable to participate in the primary election. Indeed, what if no members of even one of the major parties acquire the requisite signatures for access to the primary ballot? May its members then nominate as a body?

It is also unclear whether, under the order, the Consumer Party is still permitted to nominate by primary. The order stipulates that the Consumer Party members may nominate as a body, but does not specify whether the Party retains the right to have a primary if sufficient signatures are acquired. At oral argument the counsel for the Consumer Party expressed uncertainty about this point.

Similarly, while the district court's opinion clearly contemplates that the Consumer Party be treated as a party for all purposes other than the nominating procedure, the order stipulates as much only in the general assertion that "Nothing in this order is intended to effect a change in the current status of the Consumer Party." To this end the district court discussed how 25 P.S. §§ 2862, 2911 and 2936 must now be read to exempt the Consumer Party from their terms, but did not address other provisions of the Election Code. The court's declaration that the Consumer Party must be treated as a party in all respects other than its procedure for nominating candidates would appear to compel recasting several other provisions that stipulate different treatment of parties and bodies, *e.g.,* provisions governing the nomination of candidates for special elections, 25 P.S. §§ 2779, 2780 and the replacement of withdrawn candidates, 25 P.S. § 2939. However, since neither the order nor the opinion addresses these provisions, the Consumer Party is understandably concerned that the state will not treat it as a party for these purposes.[13]

---

**13.** The significance of this concern is illustrated by the provisions governing the nomination of candidates for special elections. Special elections occur not infrequently in Pennsylvania, and generally are called within a short time frame. Whereas parties may nominate candidates for special elections through a committee, caucus or convention, political bodies must resort to the cumbersome nominating petition apparatus. 25 P.S. §§ 2779, 2780.

The final problem with the district court's order is that, because it leaves so many questions unanswered, it almost ensures an ongoing judicial involvement in Pennsylvania's electoral scheme. Indeed, at oral argument counsel for the Consumer Party pointed out that confusion over the terms of the order had already required it to make an emergency trip to the district court. Cf. Upham v. Seamon, 456 U.S. 37, 43, 102 S.Ct. 1518, 1522, 71 L.Ed.2d 725 (1982) (remedy should not unnecessarily intrude upon state policy); Milliken v. Bradley, 433 U.S. 267, 280–281, 97 S.Ct. 2749, 2757–2758, 53 L.Ed.2d 745 (1977) (appropriate remedy "takes into account the interests of state and local authorities in managing their own affairs ...").

 In sum, the district court's chosen remedy is of at least doubtful fidelity to the legislature's intent, contains serious vagueness problems, and may be unduly

intrusive.[14] For these reasons, district court order must be set aside.

The district court must, at all events, hold a final hearing at which the parties will develop a fuller record and, perhaps, suggest a better solution.[15] As the primary election machinery will soon come into gear, we expect that the district court will immediately commence a hearing and make such factual findings as are necessary for a final order to be entered. Assuming that its earlier constitutional findings are not at issue—and neither party has challenged them on appeal—the district court would then select an appropriate remedy.[16]

For the reasons set forth above the order and opinion of the district court will be vacated and the case remanded for further and expedited proceedings consistent with this opinion.

**14.** The district court was encouraged that in Fraenzl v. Secretary of Commonwealth of Pennsylvania, 83 Pa.Cmwlth. 539, 478 A.2d 903, 906 (1984), a lower Pennsylvania court took a similar approach, holding that the Socialist Worker's Party, with only three members in a particular district, must be permitted to nominate for the general election as a political body. There are two reasons, however, why Fraenzl does not constrain us to affirm the district court's order. First, the holding in Fraenzl differs significantly from the district court's solution. Second, we are not bound by a state trial court's interpretation of a state statute.

Fraenzl appears to be limited to cases where the party had fewer members than the number of signatures required for primary ballot access; thus, it created less uncertainty and less likelihood for judicial intrusion than did the district court's order in the instant case. In addition, the Fraenzl court did not address whether the Socialist Worker's party would remain a party for all purposes other than the nominating process; it thus avoided addressing whether various provisions of the Pennsylvania Election Code had to be reinterpreted to accommodate its holding.

We do, however, find the Fraenzl holding problematic in some of the same respects as the district court's order, i.e., it suffers from vagueness and, in the absence of clear legislative intent, it interpreted the Pennsylvania Election Code contrary to its plain meaning. The fact that a state trial court permitted a hybrid body/party solution in an extreme case in no way binds us to accept the district court's solution. A federal court, in interpreting state law,

must predict what the highest state court would do. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We are unwilling to predict that the Supreme Court of Pennsylvania would defy the plain meaning of the Pennsylvania Election Code and abolish the dual party/body scheme. See 1 Pa.C.S.A. § 1921(b).

Finally, we note that a federal court should be particularly cautious about crafting a remedy that requires ongoing judicial oversight of the state election system. See supra text at 148.

**15.** It would, of course, be far preferable if a legislative solution could be crafted shortly. We understand from oral argument that the Attorney General has under consideration certain proposals for the legislature that address the confusion it created by overlooking the effect of Act 190 on small parties. Accordingly, we have directed the Clerk to forward a copy of this opinion to the Governor's counsel, the Attorney General, and the majority and minority leaders of the Pennsylvania House and Senate, with a cover letter directing their attention to this footnote.

**16.** The district court is, of course, free to consider the remedy adopted by most courts in cases of unconstitutional denial of ballot access, i.e., invalidating the challenged statute at least as applied to the aggrieved party and leaving the matter to the legislature, see e.g., Consumer Party v. Tucker, 364 F.Supp. 594 (E.D.Pa.1973); McCarthy v. Tribbitt, 421 F.Supp. 1193 (D.Del. 1976).