Brian McCORMACK, Plaintiff,

v.

TOWNSHIP OF CLINTON, Defendant.

Civ. No. 94–4510 (GEB).

United States District Court,
D. New Jersey.

Oct. 3, 1994.

Brian McCormack, pro se.

Raymond Papperman, Vaida & Manfreda, Flemington, NJ, for defendant.

### MEMORANDUM OPINION

BROWN, District Judge.

This matter comes before the Court on the application of plaintiff *pro se*, Brian McCormack, for an Order of this Court preliminarily enjoining defendant from enforcing Clinton Township Ordinance No. 552–94, pursuant to FED.R.CIV.P. 65. For the reasons set forth below, the Court will grant plaintiff's application for preliminary injunctive relief.

### I. BACKGROUND

On June 23, 1994, the Clinton Township Council adopted Ordinance No. 552–94, which provides in relevant part:

(A) Political: Any sign supporting any particular candidate, candidates party, etc., in any given election year and pertaining to election related matters.

. . . .

(G) Political signs:

. . . .

(2) Time limit: No political sign shall be displayed more than ten (10) days prior to any event or later than three (3) days after the event.

Ordinance No. 552–94, "An Ordinance to Amend Chapter 101 Entitled 'Signs,'" codified at Clinton Code Article IV § 101–9(G)(2), Attached as Appendix A–2 to Plaintiff's Brief in Support of Application for Injunctive Relief. The resolution introducing the ordinance states that its purpose is "to set forth reasonable restrictions to control the erection and removal of political signs in the interest of public safety [.]" *Id.* Amplifying this statement, Stephen Haynes, Councilman for the Township of Clinton, states:

[S]igns that I had mounted to wooden laths often were blown over by the wind or fell over and had to be fixed when it rained. I am concerned that a sign could fly into a passing car.

4. The longer the signs are up the higher the risk of them ending up on the ground or in the road. These fallen signs, combined with political flyers falling off of mailboxes, create an unnecessary litter problem and significantly impact on the aesthetics of the community as a whole. To produce more durable signs would only escalate the cost of running for election and promote the philosophy that elections can be won by the best funded candidates.

Certification of Stephen Haynes, at ¶¶ 3–4.

On September 9, 1994, plaintiff commenced this action, contending that Ordinance No. 552–94 is an unconstitutional abridgement of the Free Speech Clause of the First Amendment.[1] Plaintiff initially sought a Temporary Restraining Order on September 9, 1994. This Court denied that request and permitted defendant to submit a response to plaintiff's application. On September 14, 1994, after reviewing the papers submitted by both sides and hearing oral argument, the Court granted plaintiff's application for temporary restraints pending the issuance of an injunction preliminarily restraining defendant from enforcement of Ordinance No. 552–94. This memorandum constitutes the Court's find-

ings of fact and conclusions of law in support of the preliminary injunction.

## II. DISCUSSION

■ The grant of preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Frank's GMC Truck Center, Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir.1988) (citing *United States v. City of Philadelphia*, 644 F.2d 187, 191 n. 1 (3d Cir.1980)). When deciding such a motion, a court must consider four factors: (1) the moving party's likelihood of success on the merits; (2) the probability of irreparable injury to the moving party in the absence of relief; (3) the potential harm to the non-moving party; and, if applicable, (4) the public interest. *Fechter v. HMW Indus., Inc.*, 879 F.2d 1111, 1116 (3d Cir.1989) (citing *United States v. Price*, 688 F.2d 204, 211 (3d Cir.1982)). "Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue." *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 192 (3d Cir.1990) (citing *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987)).

### A. LIKELIHOOD OF SUCCESS

To obtain preliminary injunctive relief, the moving party must first demonstrate "a reasonable probability of succeeding on the merits of his claim...." *Frumer v. Cheltenham Tp.*, 709 F.2d 874, 876 (3d Cir.1983). Accordingly, this Court must first determine the likelihood that it will find Ordinance No. 552–94 to be an impermissible abridgement of the Free Speech Clause.

■ Plaintiff proffers two reasons why the ordinance is unconstitutional. First, plaintiff contends that the ordinance is content-based because it imposes a time restriction that is specific to political signs. Although signs pertaining to or promoting political candidates or election-related matters are subject to a ten-day restriction, other signs are sub-

---

1. This clause provides that "Congress shall make no law ... abridging the freedom of speech, or of the press...." U.S. CONST. amend. I.

ject either to no time restriction or to a thirty-day limitation. *See, e.g.,* Clinton Township Municipal Code § 101–2 ("Temporary Signs") (limiting display to thirty days in a single year), Attached as Appendix A–2 to Plaintiff's Brief in Support of Application for Injunctive Relief. Plaintiff then argues that the interests asserted by the state—promoting safety and reducing clutter in public areas—are not sufficiently compelling to justify an infringement specific to political speech. In the alternative, plaintiff suggests that even if the interests are compelling, the ordinance is not narrowly tailored because it applies only to political signs.

Defendant disputes plaintiff's arguments, and contends that plaintiff can not demonstrate a likelihood of success on the merits. Defendant first argues that the ordinance is content-neutral. Second, defendant argues that even if the ordinance is content-based, it passes the standard set forth in *Burson v. Freeman,* 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992). In short, defendant contends that the asserted interests are compelling, and that Ordinance No. 552–94 is the least restrictive means of promoting those interests.

■ There is no question that Clinton Township regulates speech by imposing various regulations upon posting signs. *See generally* Clinton Code §§ 101–1 to 101–9, attached as Appendices A–1 to A–2 to Plaintiff's Brief in Support of Application for Injunctive Relief. Of course, such restrictions are not impermissible, because "even speech entitled to the highest First Amendment protection may be subject to reasonable time, place and manner regulations that are content-neutral, serve a significant government interest, and that leave open ample alternative channels for communication of the information." *American Future Sys., Inc. v. Pennsylvania State University,* 688 F.2d 907, 915 (3d Cir.1982) (citing *Heffron v. Internat'l Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298 (1981), *cert. dismissed,* 459 U.S. 1093, 103 S.Ct. 583, 74 L.Ed.2d 941 (1982)). *See also City of Ladue v. Gilleo,* —— U.S. ——, ——, 114 S.Ct. 2038, 2041, 129 L.Ed.2d 36 (1994) (noting that reg-

ulation of signs is permissible exercise of state's police powers). The first level of inquiry, therefore, is whether Ordinance 552–94 is content-based or content-neutral. If the ordinance discriminates on the basis of content, then the Court can not analyze the ten-day limitation under a time, place and manner standard, but instead according to the more rigorous content-based test. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 513, 101 S.Ct. 2882, 2895, 69 L.Ed.2d 800 (1980).

■ A state or municipal law is content-neutral if it regulates "without reference to the content of the regulated speech...." *Frumer,* 709 F.2d at 876. "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) (citing *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 295, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984)). Thus, if the governmental regulation is " 'justified without reference to the content of the regulated speech,' " that regulation will be deemed content neutral, even if it incidentally impacts some forms of speech. *Id.* (quoting *Community for Creative Non–Violence,* 468 U.S. at 293, 104 S.Ct. at 3069). *See also Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346; *Metromedia,* 453 U.S. at 513–16, 101 S.Ct. at 2895–97 (providing two analytically distinct bases upon which to determine whether a statute is content-neutral: (i) whether the provision protects commercial speech more than noncommercial speech; and (ii) whether the provision "distinguishes ... between permissible and impermissible signs ... by reference to their content").

In this case, the time restriction in Ordinance No. 552–94 clearly is not content neutral, because it specifically limits signs advertising political events or viewpoints to posting ten or less days preceding the event. By contrast, signs advertising yard sales, town

festivities or athletic events, to cite a few examples, are presumably temporary signs and could be posted at any time within thirty days before the actual event. Clinton Code § 101–2 ("Temporary Signs"). In this regard, Ordinance No. 552–94 is somewhat unique among challenged regulations that have culminated in litigation, because unlike many of those laws, which effectively prohibited many forms of speech but permitted others, the ten-day limitation in this ordinance focuses solely upon political speech as the subject of its constraint. *Compare City of Ladue v. Gilleo,* —— U.S. ——, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994) (striking down municipal ordinance that banned all residential signs except those falling within any of ten exceptions); *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (striking city ordinance regulating permanently placed outdoor signs because exemptions were content based and favored commercial speech over noncommercial speech); *Rappa v. New Castle County,* 18 F.3d 1043 (3d Cir.1994) (striking Delaware statute prohibiting outdoor advertising and county ordinance banning exterior signs because exceptions for signs promoting local meetings and industries violated content-neutrality test). Where, as here, the provision at issue so clearly restricts one form of speech to a heightened degree, the Court need not confront the difficult issues presented in *Metromedia* and *Rappa* of whether the exceptions contained in the statute effectively render it an unconstitutional preference of some forms of speech over others or, in the alternative, whether the statute is unconstitutionally underinclusive. By limiting political signs to ten days before the events they advertise, Ordinance No. 552–94 pinpoints one form of speech as the subject of a limitation more burdensome than that imposed on any other form of speech. In so doing, the provision obviously favors commercial speech, which conceivably could remain on a posted sign for much lengthier periods, over this form of noncommercial speech. *See also Whitton v. City of Gladstone, Mo.,* 832 F.Supp. 1329 (W.D.Mo.1993) (holding unconstitutional ordinance that restricted posting political signs to thirty or less days before

event as content-based preference of commercial over noncommercial speech).

Additionally, the Court rejects the suggestion that Ordinance No. 552–94 is not content-based because it does not favor or discourage any particular political viewpoint. In *Boos,* the Court concluded that the statute in issue, which made it unlawful to display any sign critical of a foreign government within 500 feet of a foreign embassy, was not "viewpoint based." *Boos,* 485 U.S. at 319, 108 S.Ct. at 1162–63 ("The display clause determines which viewpoint is acceptable in a neutral fashion by looking to the policies of foreign governments."). Nevertheless, the Court invalidated the provision because it was not content-neutral insofar as it segregated an entire area of speech. *Id.* The Court thus stated that "we have held that a regulation that 'does not favor either side of a political controversy' is nonetheless impermissible because the First Amendment's hostility to content-based regulation extends ... to prohibition of public discussion of an entire topic." *Id.* (quoting *Consolidated Edison Co. v. Public Service Comm'n,* 447 U.S. 530, 537, 100 S.Ct. 2326, 2333, 65 L.Ed.2d 319 (1980)).

While the statute at issue in *Boos* completely banned one form of speech in a given area and therefore was arguably more drastic in its regulatory measure than Ordinance No. 552–94, their dissimilarity lies solely in the extent of their respective restrictions, for the statutes are analogous in their selection of one particular area of speech for regulation. In short, *Boos* makes clear that viewpoint neutrality does not equate with content neutrality.

Having concluded that Ordinance No. 552–94 is content-based, the Court must apply a more exacting constitutional standard than if the ordinance were content-neutral. *See Ward,* 491 U.S. at 791, 109 S.Ct. at 2753; *Boos v. Barry,* 485 U.S. 312, 321, 108 S.Ct. 1157, 1163–64, 99 L.Ed.2d 333 (1988); *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 804–05, 104 S.Ct. 2118, 2128–29, 80 L.Ed.2d 772 (1984). The Court has instructed:

Our cases indicate that as a *content-based* restriction on *political speech* in a *public*

*forum*, [the statute in question] must be subjected to the most exacting scrutiny. Thus, we have required the State to show that the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."
*Boos*, 485 U.S. at 321, 108 S.Ct. at 1164 (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)).

■ Courts have attached significant weight to a government's interest in minimizing the clutter and distractions occasioned by signs posted in public areas such as curbsides, highway medians and sidewalks. Indeed, the Court's recent decision in *Gilleo* recognized that

> [w]hile signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs....

*Gilleo*, —— U.S. at ——, 114 S.Ct. at 2041.

In *Taxpayers for Vincent*, the Court addressed the constitutionality of a statute that prohibited posting signs on public property. *Taxpayers for Vincent*, 466 U.S. at 791, 104 S.Ct. at 2121. After tracing its decisions in *Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding ordinance prohibiting excessively loud sound trucks), *Lehman v. City of Shaker Heights*, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (upholding statute prohibiting political advertising on buses because card space on transport systems is not First Amendment forum), and *Metromedia*, the Court concluded that "municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression.... [T]he visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property—constitutes a significant substantive evil within the City's power to prohibit." *Taxpayers for Vincent*, 466 U.S. at 806–07, 104 S.Ct. at 2129–30. It is thus clear that courts have attached considerable weight to the state's interest in reducing the visual blight and potential dangers associated with unmanageable accumulation of waste from signs in public areas. Accordingly, the Township of Clinton may exercise its police power to promulgate and to enforce regulations that vindicate its citizens' aesthetic and safety interests by minimizing clutter, obstructed views and various traffic hazards.[2]

■ However, Ordinance No. 552–94 is not narrowly tailored to serve those objectives. Rather than impose a ten-day limit on all signs, defendant has singled out for restriction those displaying the most protected form of speech. It is difficult to understand, for example, why political signs should be held to a ten-day time limit while signs advertising garage sales, which presumably are common and therefore also likely to produce distractions and unwanted litter are at most restricted to thirty days. Additionally, the record provides no basis for concluding that non-political signs would necessarily be constructed any more sturdily than political signs; signs advertising yard sales, for example, may be pieces of paper or cardboard tacked or otherwise affixed onto a telephone pole or other existing structure. In sum, considered against the wide array of signs that are subject either to no time limitation, or to one that is less burdensome on commercial speech, it is readily apparent that the ten-day restriction in Ordinance No. 552–94 will do little, if anything, to promote the objectives asserted by defendant. As such, this Court can not conclude that the ordi-

---

**2.** It is important to note, however, that while courts certainly have recognized states' and municipalities' interests in aesthetics and safety, no court has ever held that these interests form a compelling justification for a content-based restriction of political speech. *Cf. Whitton*, 832 F.Supp. at 1335 ("Traffic safety and aesthetics are significant interests ... but they are not compelling interests, especially given the nature of the First Amendment rights at stake.") (internal citation omitted); *Loftus v. Township of Lawrence Park*, 764 F.Supp. 354, 361 (W.D.Pa.1991) ("we doubt that aesthetics or residential quietude is sufficiently compelling to ever justify a content-based restriction ... on freedom of expression").

nance is narrowly tailored to the township's interests in safety and aesthetics.[3]

Moreover, defendant already has in effect provisions·that adequately serve its interests in safety and aesthetics. For example, § 101–9(G)(2), enacted as part of Ordinance No. 552–94, provides that the signs shall be removed within three days after the event. Ordinance No. 552–94, § 101–9(G)(2), Attached as Appendix A–2 to Plaintiff's Brief in Support of Application for Injunctive Relief. Moreover, as noted above, the township already has a provision to insure that no ·temporary sign remains for an unduly lengthy period of time. The Clinton Code provides that "temporary signs" shall be "displayed for a period not in excess of thirty (30) days in any one (1) calendar year [and] shall be removed within ten (10) days after the termination of the special event." *Id.* § 101–2. *See also id.* § 101–4(E) ("All temporary signs shall be removed within ten (10) days after termination of the special event."). Finally, the township has a provision regulating unsafe sign conditions. This statute provides in relevant part:

Whenever, in the opinion of the Zoning Officer, any sign becomes unsafe or endangers the safety of a building or premises or endangers the public safety the Zoning Officer shall send a letter by certified mail to the owner of the sign or the owner of the premises on which the sign is located, ordering that such sign be made safe or removed within thirty (30) days of receipt of letter. If the permittee fails to remove, alter or repair it within thirty (30) days after such notice, such sign shall be removed by the Zoning Officer at the reason-·able expense of the holder of the permit. The Zoning Officer may cause any sign or sign structure to be removed summarily and without written notice if it is an immediate peril to persons or property by virtue of its construction or moorings.

*Id.* § 101–11.

These regulations would seem to allow the township to apply its police powers to vindicate the aesthetic and safety interests, and to do so in a manner that is content-neutral. For example, the township could apply the temporary sign restrictions to political signs, thereby vindicating its interests in aesthetics and safety in a content-neutral manner while leaving open adequate opportunities for communication. The availability of such alternatives that would not pinpoint political speech for a more severe restriction underscores the Court's conclusion that the ten-day limit specific to political signs is not narrowly tailored.[4]

---

**3.** For this reason, defendant's contention that *Frumer* mandates the conclusion that Ordinance No. 552–94 is constitutional is misplaced. In *Frumer*, the Third Circuit addressed the constitutionality of a township ordinance that provided: "No temporary sign shall be affixed to utility poles, street signs or any other structures within the rights-of-way of public streets or highways within the Township of Cheltenham." *Frumer*, 709 F.2d at 875. It is true that the Third Circuit appropriately recognized the township's need to regulate signs. *See, e.g., id.* at 878 ("[T]he Board of Commissioners cannot be said to have acted unreasonably in hoping that the ordinance would promote traffic safety and community aesthetics."). *See also supra* page —— (quoting *Gilleo*, —— U.S. at ——, 114 S.Ct. at 2041). However, that statute was "certainly facially content-neutral since it [did] not discriminate among the types of speech or the content of the messages which might be found on temporary signs." *Frumer*, 709 F.2d at 877. The same is not true of Ordinance No. 552–94, which clearly discriminates against political speech with respect to the time frame within which such signs may be posted. Accordingly, unlike *Frumer*, which involved application of the content-neutral standard to an ordinance sufficiently related to a significant governmental interest, this case requires analysis of a content-based ordinance that is not the least restrictive means by which the government may promote its interests.

**4.** Apparently, defendant proffers a second justification for the ten-day time restriction on political signs. Defendant asserts that Ordinance No. 552–94 levels the campaign playing field for candidates by not "escalat[ing] the cost of running for election and promot[ing] the philosophy that elections can be won by the best funded candidates." Certification of Stephen Haynes, at ¶ 4. This rationale is unavailing, and can not possibly salvage the time restriction contained in the ordinance. By limiting the posting of political signs to such a short interval preceding the election, defendant actually may prejudice the potential for a lesser known candidate or challenger with only modest campaign resources. While it may be costlier to construct a sturdy sign rather than one which is flimsy, the difference in cost may not compare to the expense incurred in finding alternatives to posted signs. Print space in a local newspaper or time on local airwaves, for example, is expensive and a continuing cost over

In light of the Court's conclusion that Ordinance No. 552–94 is content-based and is not narrowly tailored to promote a significant state interest, this Court must hold in favor of plaintiff on this aspect of its preliminary injunctive relief analysis.

## B. IRREPARABLE INJURY

■ The Court must next determine whether denial of the application for preliminary injunctive relief would cause plaintiff irreparable injury. *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir.1987). The plaintiff bears the burden of establishing a "clear showing of immediate irreparable injury." *ECRI v. McGraw Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987) (quoting *Continental Group, Inc. v. Amoco Chemical Corp.*, 614 F.2d 351, 359 (3d Cir.1980)).[5]

■ Although "[t]he loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable harm[,]" *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976), "the assertion of First Amendment rights does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits." *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir.1989). Instead, the Third Circuit has stated that, to establish irreparable harm for injunctive purposes, a plaintiff must demonstrate that the ordinance has a " 'chilling effect on free expression,' " in the form of an unconstitutional governmental suppression of speech. *Id.* at 73 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 487, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965)). Therefore, a court may grant injunctive relief only if it concludes that the provision in dispute constitutes " 'direct penalization, as opposed to incidental inhibition,

of First Amendment rights....' " *Id.* (quoting *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir.1983)).

■ The Court's conclusion that the ten-day restriction in Ordinance No. 552–94 is a content-based abridgment of political speech which is not narrowly tailored to advance a compelling government interest satisfies the standard articulated by the Third Circuit. By threat of removing any offending signs and imposing criminal sanctions, *see* Clinton Code § 101–12,[6] defendant is enforcing an ordinance that constitutes an unconstitutional suppression of political speech. Accordingly, the Court concludes that plaintiff has satisfied this aspect of the preliminary injunction analysis.

## C. BALANCING OF THE EQUITIES & PUBLIC INTEREST

■ The Court next must "balance the equities" of plaintiff's and defendant's positions to determine whether granting the injunction would cause defendant more harm than the harm plaintiff is likely to suffer if the injunction is not granted. *Fechter*, 879 F.2d at 1116 (citing *United States v. Price*, 688 F.2d 204, 211 (3d Cir.1982)). In this case, the equities weigh exclusively in plaintiff's favor. Although defendant has a legitimate interest in promoting its citizens' interests in aesthetics and safety, it is unclear exactly how it expects the ten-day time restriction in Ordinance No. 552–94 to vindicate those concerns. *See supra* pages 1325–1326. Accordingly, it does not appear that any harm will accrue to defendant or its citizens from the grant of an injunction, and certainly no harm sufficient to warrant an unconstitutional restriction of the township citizens' First Amendment freedoms. *See Citizens United v. Long Beach Township*, 802

---

any significant length of time. Therefore, any challenger with less name recognition than his or her incumbent opposition could be, by operation of the ordinance, hard-pressed to campaign effectively.

5. Defendant concedes that an unconstitutional abridgment on First Amendment free speech rights may constitute irreparable harm. Defendant's Brief in Opposition, at 3.

6. This provision states:

Any person, firm or corporation who shall violate, disobey, omit, neglect or refuse to comply with any provision of this chapter shall be, upon conviction thereof, subject to a fine of not more than five hundred dollars ($500.) or to imprisonment for not more than ninety (90) days, or both, and each and every day such violation continues shall constitute a separate and distinct offense.

Clinton Code § 101–12.

F.Supp. 1223, 1238 (D.N.J.1992); *Loftus v. Township of Lawrence Park,* 764 F.Supp. 354, 361 (W.D.Pa.1991).

It is readily apparent that this reasoning applies equally to the Court's consideration of the public interest. Accordingly, the Court also concludes that plaintiff has satisfied the final prong of the analysis, and therefore has carried his burden of proving that the issuance of preliminary injunctive relief is warranted in this matter.

## III. CONCLUSION

For the foregoing reasons, the Court will grant plaintiff's application for an Order preliminarily enjoining defendant from enforcing the ten-day restriction in Clinton Township Ordinance No. 552–94, codified at Article IV § 101–9(G)(2) of the Clinton Code.

 The Court also will waive the usual requirement that a plaintiff seeking preliminary injunctive relief post cash or a bond as security. Federal Rule of Civil Procedure 65(c) requires that an applicant for a preliminary injunction must post some form of security. That rule provides in relevant part:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

FED.R.CIV.P. 65(c). In certain circumstances, however, a court may waive the security requirement. In *Temple Univ. v. White,* 941 F.2d 201, 219 (3d Cir.1991), *cert. denied sub nom., Snider v. Temple Univ.,* 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992), the Third Circuit adopted a test devised by the First Circuit in *Crowley v. Local No. 82, Furniture and Piano,* 679 F.2d 978 (1st Cir.1982), *rev'd on other grounds,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984), for determining when a strict reading of Rule 65(c) would be inappropriate. Under that test, the court first should weigh the potential loss to the enjoined party against the hardship that a bond requirement would

impose on the applicant. *Temple Univ.,* 941 F.2d at 219 (quoting *Crowley,* 679 F.2d at 1000). Second, the court should consider whether the application seeks to enforce a significant federal right or a matter of public interest. *Id.* (quoting *Crowley,* 679 F.2d at 1000). In an earlier case, the Third Circuit also noted that if the imposition of an injunction imposes no risk of monetary harm to defendant, the court need not address whether it may dispense with the security requirement. *System Operations v. Scientific Games Dev. Corp.,* 555 F.2d 1131, 1146 (3d Cir.1977).

 Applying the above factors to the instant case, the Court concludes that it may waive the security requirement. The reasoning set forth *supra* suggests that defendant is unlikely to suffer any loss, because plaintiff is most likely to succeed on the merits of this action and the equities weigh exclusively in plaintiff's favor. *See supra* pages 1322–1328. Moreover, the imposition of anything more than a nominal bond could constitute a severe hardship to plaintiff. Additionally, it is clear that the vindication of political speech against a content-based ordinance is both a significant right and a matter of tremendous public significance. Finally, the imposition of an injunction in this case will not impose any monetary harm to defendant.

An appropriate Order is filed herewith.

### ORDER

This matter comes before the Court on the application of plaintiff *pro se* Brian McCormack for preliminary injunctive relief restraining defendant, the Township of Clinton, from enforcing Clinton Township Ordinance No. 552–94.

For the reasons set forth in this Court's Memorandum Opinion,

It is on this 3rd day of October, 1994,

ORDERED that plaintiff's application for preliminary injunctive relief from enforcement of the ten-day time restriction in Clinton Township Ordinance No. 552–94, codified at Article IV § 101–9(G)(2) of the Clinton Code, be and hereby is GRANTED; and it is

FURTHER ORDERED that defendant, Township of Clinton, or its elected officials,

servants, employees or attorneys thereof, be preliminarily restrained from prohibiting the posting of political signs ten (10) days before an election.