Larry WHITTON, Plaintiff,

v.

The CITY OF GLADSTONE, MISSOURI, Defendant.

No. 92–0848–CV–W–1.

United States District Court, W.D. Missouri, W.D.

Sept. 17, 1993.

W. Joseph Hatley, Cooperating Atty., ACLU of Kansas and Western MO, Overland Park, KS, and William C. Odle, Cooperating Atty., ACLU of Kansas and Western MO, Kansas City, MO, for plaintiff.

Linda Salfrank, Swanson, Midgley, Kansas City, MO, for defendant.

## ORDER

WHIPPLE, District Judge.

There are cross motions for summary judgment before the court. The court will grant plaintiff's motion and deny defendant's motion for the reasons stated below.

### I. Background

Plaintiff Larry Whitton asks this court to hold that certain provisions of the City of Gladstone's (Gladstone) Sign Ordinance violate the United States Constitution's First and Fourteenth Amendments. Whitton lives in Gladstone and also owns a business there. Whitton contends that the Sign Ordinance unconstitutionally hampers his ability to use his residential and commercial property in running and assisting others in running for political office.

Whitton's original complaint challenged the constitutionality of the Sign Ordinance's (1) fifteen-day durational limitation on the posting of political signs prior to an election; (2) five-day removal requirement of political signs after an election; (3) regulation of the number of political signs that could be placed in each residential or commercial lot and (4) regulation of external illumination of political signs. Whitton, at the same time he filed the complaint, also asked the court for a Tempo-

rary Restraining Order (TRO) and a Preliminary Injunction to allow him to post political signs that promote his candidacy for sheriff of Gladstone in violation of the Sign Ordinance.

The day before the court held a hearing on the TRO and the Preliminary Injunction, Gladstone repealed the Sign Ordinance and enacted a new one. The New Sign Ordinance removes the provision which limited the placement of all political signs [1] to one sign per candidate or issue per residential or commercial lot, restricts the total allowable square footage sign space per lot, extends the pre-election posting of signs from fifteen days to thirty days, extends the removal requirement from five to seven days and adds a section explaining the legislative purpose of the New Sign Ordinance. The New Sign Ordinance does not differ from the previous ordinance in any other respect. The court, at the TRO and Preliminary Injunction hearing, ruled in Gladstone's favor finding that Whitton failed to show he would suffer irreparable harm if the city enforced the New Sign Ordinance.

■ Whitton now challenges the constitutionality of §§ 25-45, 25-46 and 25-47(b) of the New Sign Ordinance. Although the election is over, Whitton states that he plans to run for other offices in the future.[2] The relevant part of § 25-45 prohibits a residential or commercial owner from placing a political sign on his or her property more than thirty days before an election to which the sign pertains.[3] The section also requires

that the sign be removed within seven days after the election. Section 25-47(b) makes the owner of the property, the candidate and the chairperson of a political committee responsible for removing the signs. Section 25-46 prohibits the illumination of all political signs.

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

■ A movant is entitled to summary judgment under Fed.R.Civ.P. 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, the moving party bears the burden of proof. *Aetna Life Ins. Co. v. Great Nat'l Corp.*, 818 F.2d 19, 20 (8th Cir.1987). When considering a motion for summary judgment, the court must scrutinize the evidence in the light most favorable to the non-moving party and the non-moving party "must be given the benefit of all reasonable inferences." *Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp.*, 950 F.2d 566, 569 (8th Cir.1991) (citation omitted). If the moving party meets its burden of proof, the burden shifts to the non-moving party who must set forth specific facts showing that there is a genuine issue for trial to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202, 211–12 (1986).

1. Section 25-8 of the New Sign Ordinance defines political signs as: "Any sign promoting, supporting, or opposing any candidate, office, issue or proposition to be voted upon at any public election."

2. Thus, the case is not moot because it involves issues "capable of repetition, yet evading review." *Moore v. Ogilvie*, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1, 4 (1969) (citation omitted).

3. Section 25-45 entitled, "Restriction of political signs within zones," reads:

A. Political signs located in an area zoned for residential use shall not exceed two (2) feet by two (2) feet on each side. In residential areas exposed political sign face shall not exceed an

aggregate gross surface area of sixty-four (64) square feet per lot. No sign within such area shall be placed or erected more than thirty (30) days prior to the election to which such sign pertains and such sign shall be removed within seven (7) days after such election.
B. Political signs located in an area zoned for industrial or commercial use shall not exceed thirty-two (32) square feet in total and shall not have any side greater than eight (8) linear feet. In industrial and commercial areas exposed political sign face shall not exceed an aggregate gross surface area of five hundred twelve (512) square feet per lot. No sign within such area shall be placed or erected more than thirty (30) days prior to the election to which such sign pertains and such sign shall be removed within seven (7) days after such election.

▄ The two requirements of Rule 56(c) are that there be (1) no genuine issue of (2) material fact. The United States Supreme Court explains that to establish a genuine issue of fact sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). If a rational trier of fact considering the record as a whole could not find in favor of the non-moving party, then a trial is unnecessary. *Id.* Substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. In assessing whether a material fact is subject to a genuine dispute, a court should employ a standard essentially identical to that governing a motion for directed verdict under Rule 50(a). *Id.,* at 250, 106 S.Ct. at 2511, 91 L.Ed.2d at 213.

▄ Finally, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court concluded by encouraging the use of summary judgment in appropriate cases: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.,* at 327, 106 S.Ct. at 2554, 91 L.Ed.2d at 276 (citations omitted). *See also, City of Mt. Pleasant v. Associated Elec. Coop. Inc.,* 838 F.2d 268, 273 (8th Cir.1988) ("The motion for summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, free courts' trial time for those cases that really do raise genuine issues of material fact."). However, a court should always be mindful that summary judgment is an extreme remedy. *Inland Oil & Transp. Co. v. United States,* 600 F.2d 725, 727 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

The parties agree that there are no genuine issues of material fact for a trier of fact to resolve. The present case is thus an appropriate one for the court to decide on a motion for summary judgment.

## B. Durational Limitations and Removal Requirements

"Congress shall make no law ... abridging the freedom of speech...." U.S. Const. amend. I. The Fourteenth Amendment, of course, secures the freedom of speech against states as well. *Burson v. Freeman,* 504 U.S. ——, ——, 112 S.Ct. 1846, 1849–50, 119 L.Ed.2d 5, 12 (1992).

▄ Section 25–45 of the New Sign Ordinance prohibits a residential or commercial owner from placing a political sign on his or her property more than thirty days before an election to which the sign pertains and requires the sign be removed within seven days of the election. Section 25–45, in essence, constitutes a complete ban on posting political signs which is temporarily lifted thirty days before an election and reinstated after an election takes place. *City of Antioch v. Candidates' Outdoor Graphic Serv.,* 557 F.Supp. 52, 55 (N.D.Cal.1982). The posting of political signs constitutes speech. *Arlington County Republican Comm. v. Arlington County,* 983 F.2d 587, 593–94 (4th Cir.1993); *Baldwin v. Redwood City,* 540 F.2d 1360, 1366 (9th Cir.1976), *cert denied,* 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). Section 25–45 burdens speech, thus the next issue is which test the court should use in analyzing the constitutionality of § 25–45.

### 1. The Appropriate Test for Analyzing Section 25–45

▄ Gladstone argues that the appropriate test for analyzing the constitutionality of § 25–45 is the time, place and manner test. A time, place or manner test is appropriate if the restrictions are "justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Clark v. Community for Creative Non-Vio-*

*lence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221, 227 (1984).

The court cannot use the time, place and manner test in analyzing the thirty-day durational limitation and the seven-day removal requirement if Gladstone regulates speech on the basis of its content. A plurality of the Supreme Court in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), articulated two tests it uses to determine if a restriction is content-based. Although the Supreme Court was sharply divided, it did not divide on the issue of what constitutes a content-based regulation. The first test is whether Gladstone gives commercial speech a greater degree of protection than noncommercial speech. If it does then the New Sign Ordinance is content-based and the court cannot analyze the thirty-day durational limitation and the seven-day removal requirement under a time, place and manner standard. *Id.,* at 513, 101 S.Ct. at 2895, 69 L.Ed.2d at 818. The second test is whether the section "distinguishes ... between permissible and impermissible signs ... by reference to their content." *Id.,* at 516, 101 S.Ct. at 2897, 69 L.Ed.2d at 820.

■ Section 25–45 fails both tests and is thus, not content-neutral. First, Gladstone favors commercial speech over noncommercial speech. Gladstone argues that it favors noncommercial speech over commercial speech because some commercial signs are subject to application, permit, fee or insurance requirements, but political signs are not. Gladstone does require some commercial signs to undergo several requirements that political signs do not. However, in residential areas, a homeowner may post a "For Sale" or "For Rent" sign indefinitely and post a construction sign for up to ninety days prior to construction without having to meet the application, permit, fee or insurance requirements. A homeowner may also post a sign advertising a garage sale although the parties have not provided the court with information as to whether such signs must meet any administrative requirements. Fur-

ther, as discussed earlier, § 25–45 imposes a ban on political speech except during the thirty-day period before the election while allowing commercial owners to post permanent signs indefinitely. The New Sign Ordinance, thus does treat some commercial signs more favorably than political signs. In regards to removal, the political sign must be removed within seven days of the election, but a construction sign may remain standing an additional three days, or a total of ten days.

Second, assuming that the New Sign Ordinance does not treat commercial signs more favorably than noncommercial signs, § 25–45 distinguishes between permissible and impermissible signs on the basis of the signs' content. The Supreme Court recently determined that prohibiting newsracks that distribute handbills, but not newspapers regulates on the basis of content. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. ——, —— – ——, 113 S.Ct. 1505, 1517–18, 123 L.Ed.2d 99, 115–17 (1993). There the Supreme Court found that the city did not regulate on the basis of any hostility toward a particular viewpoint, but recognized that "[u]nder the city's newsrack policy, whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack. Thus, by any commonsense understanding of the term, the ban in this case is 'content-based.'" *Id.,* at ——, 113 S.Ct. at 1516–17, 123 L.Ed.2d at 116. Similarly, in the present case, a sign that reads "For Sale" thirty days before an election is permissible, but one that reads "Vote for Whitton" is not. What distinguishes between a permissible and an impermissible sign rests upon the content of the sign. Section 25–45, is content-based under any "commonsense understanding of the term." *Id.*

Further, a political sign that states "Whitton is Honest" or "Pro–Choice" is impermissible if an election on the candidate or issue is not pending,[4] but is permissible if an elec-

---

4. There is some confusion as to whether the ordinance prohibits a homeowner or a business from posting a sign advocating, for example, a position on abortion. Whether the New Sign Ordinance bans such speech does not change the

court's analysis, the court discusses this issue only to discuss a possible contradiction within the ordinance.

Stuart Borders, who interprets and enforces the New Sign Ordinance for Gladstone, testified

tion is pending within thirty-days from the posting of the signs. Again, what distinguishes between an impermissible and a permissible sign rests upon the content of the sign. *See, Burson,* 504 U.S. at ——, 112 S.Ct. at 1850, 119 L.Ed.2d at 13 ("Whether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign.").

Gladstone points to language in *Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), for its argument that § 25–45 is content-neutral. The *Ward* Court stated that the "principal inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id.,* at 791, 109 S.Ct. at 2753, 105 L.Ed.2d at 675. Gladstone argues it did not adopt § 25–45 because of any disagreement with the message the political signs convey thus, § 25–45 is content-neutral. In short, Gladstone argues that because it did not adopt the section to suppress a particular viewpoint, § 25–45 is content-neutral. The court accepts that Gladstone did not adopt § 25–45 because of a dislike of a particular viewpoint, but § 25–45 still prohibits the posting of political signs that pertain to an election more than thirty days before the election. Recently, the Supreme Court held that "content-based regulation extends not only to a restriction on a particular viewpoint, but also to a prohibition of public discussion of an entire topic." *Burson,* 504 U.S. at ——, 112 S.Ct. at 1850, 119 L.Ed.2d at 13. Likewise, the Supreme Court

held that a ban on utility bill inserts discussing controversial issues of public policy such as nuclear power is not content-neutral even though the ban suppressed all points of view of an issue. *Consolidated Edison Co. v. Public Serv. Comm'n,* 447 U.S. 530, 537–44, 100 S.Ct. 2326, 2333–37, 65 L.Ed.2d 319, 327–33 (1980).

The Supreme Court's decision in *Renton v. Playtime Theaters, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), also does not help Gladstone. There, the ordinance prohibited adult movie theaters from locating within 1,000 feet of a residential zone, church, park or school. *Id.,* at 43, 106 S.Ct. at 926–27, 89 L.Ed.2d at 35. The *Renton* Court upheld the regulation because the regulation was aimed not at suppressing adult films, but at the secondary effects that adult movie theaters have on residential zones, churches, parks and schools. *Id.,* at 47–49, 106 S.Ct. at 928–30, 89 L.Ed.2d at 37–39. The ordinance could distinguish between adult movie theaters and other theaters because the city was concerned with the secondary effects that adult movie theaters caused, but which other movie theaters did not cause. In the present case, Gladstone distinguishes between political and nonpolitical signs and between political signs that are posted within thirty days of an election and those that are not within thirty days of an election. Unlike the situation in *Renton,* political signs do not cause any secondary effects that distinguish them from other temporary or permanent signs and political signs posted more than thirty days of an election

in deposition that the New Sign Ordinance allows a homeowner to post a sign advocating a position on abortion even though it is not an issue to be voted on within thirty days. If Mr. Border's reading of the New Sign Ordinance is correct, Whitton could post a sign advocating a position on abortion all year long, regardless of whether abortion is an issue the voters will decide in an upcoming election or not. This reading conflicts with § 25–45, because if abortion is an issue the voters will decide in an election, Whitton may not post a sign advocating a position on abortion until thirty days before the election and he must remove the sign within seven days after the election. Mr. Borders' reading would make the New Sign Ordinance impermis-

sibly vague. *E.g., N.A.A.C.P. v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

This reading also conflicts with the language of the New Sign Ordinance. The only permanent signs allowed in residential areas are name plate signs, real estate signs, church signs, construction signs, subdivision development signs, subdivision entrance signs and in some residential areas, ground signs. § 25–28. Gladstone also prohibits temporary signs in residential areas. § 25–39. The city does allow political signs as discussed in this Order, but political signs do not include general ideological speech under the New Sign Ordinance. Political signs include only signs that promote a "candidate, office, issue or proposition to be voted upon at any public election." § 25–8.

do not cause any secondary effects that distinguish them from political signs posted within thirty days of an election. In short, *Renton* does not apply to the present case because the political signs that Gladstone prohibits do not cause any secondary effects that distinguish them from the signs Gladstone permits. *See, Cincinnati*, 507 U.S. at ––––––––, 113 S.Ct. at 1516–18, 123 L.Ed.2d at 116–17 (*Renton* does not apply because the newsracks the city prohibits do not cause any secondary effects that distinguish them from the newsracks the city permits.).

## 2. Section 25–45 Fails Strict Scrutiny

 Whitton cites the *Burson* Court for the test to analyze a content-based regulation. The *Burson* Court states that a content-based regulation must be (1) necessary to serve a compelling state interest and (2) that it be narrowly drawn to achieve that interest. *Burson*, 504 U.S. at ––––, 112 S.Ct. at 1850–52, 119 L.Ed.2d at 13–14. The test that *Burson* articulates is used to analyze content-based restrictions on speech in *public forum* and not on private property. *Id.*, at ––––, 112 S.Ct. at 1850, 119 L.Ed.2d at 13. However, that Gladstone attempts to regulate a resident's exercise of speech in his or her own yard demands that the court apply more exacting, not less scrutiny than it would in analyzing a content-based regulation in public forum cases. *Cf. Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 811, 104 S.Ct. 2118, 2132, 80 L.Ed.2d 772, 791 (1984) ("So here, the validity of the aesthetic interest in the elimination of signs on public property is not compromised by failing to extend the ban to private property. The private citizen's interest in controlling the use of his own property justifies the disparate treatment."). Thus, because the strict scrutiny that *Burson* articulates is the minimum scrutiny that this court should use in analyzing a content-based regulation of political signs on private property, the court will use the test that *Burson* articulates.

 Gladstone argues that its interest in traffic safety and aesthetics are compelling interests. Traffic safety and aesthetics are significant interests, *Metromedia*, 453 U.S. at 507–08, 101 S.Ct. at 2892–93, 69 L.Ed.2d at 814–15, but they are not compelling interests, especially given the nature of the First Amendment rights at stake. Courts give political speech the highest degree of protection. *E.g., Boos v. Barry*, 485 U.S. 312, 319, 108 S.Ct. 1157, 1162–63, 99 L.Ed.2d 333, 343–44 (1988) (The Supreme Court carefully scrutinizes freedom of speech restrictions on public issues.). Gladstone does not cite any cases holding that traffic safety or aesthetics or both are compelling interests.

The restrictions also are not narrowly tailored to enhance traffic safety. Section 25–50, entitled "Legislative Purpose and Intent of Political Sign Sections" states in subsection "C" that durational limits are necessary because the severe weather conditions will adversely affect temporary political signs creating aesthetic and safety issues. Gladstone already requires in §§ 25–10 and 25–12 that signs be clean, free from hazards and if insecure, the property owner or the person maintaining the sign must fix the sign. Gladstone has ordinances that address the same safety concerns that § 25–45 purports to address. Further, other than Gladstone's legislative statements that the restrictions on political signs are designed to further traffic safety, Gladstone does not provide any evidence that political signs cause problems with traffic safety or that removing political signs will improve traffic safety. Once Gladstone allows political signs for thirty days, "it is difficult to imagine how prohibiting political signs at other times significantly promotes highway safety." *Van v. Travel Info. Council*, 52 Or.App. 399, 628 P.2d 1217, 1224 (1981).

Gladstone also has not narrowly tailored the restrictions on political signs to achieve its interest in preserving the city's aesthetics. The city fails to show the court how its interest in aesthetics justifies a thirty-day time limit on posting political signs, but not on commercial signs. As the concurring Justices in *Metromedia* stated, "before deferring to a city's judgment, a court must be convinced that the city is seriously and comprehensively addressing aesthetic concerns." *Metromedia*, 453 U.S. at 531, 101 S.Ct. at 2905, 69 L.Ed.2d at 829 (Brennan, J. concurring). Regarding both traffic safety and

aesthetics, the city could regulate the construction of the signs, amount of signage[5] and the duration of time a temporary political sign can remain before the candidate or committee must remove or replace the sign. The Supreme Court also recognizes that "private property owners' aesthetic concerns will keep the posting of signs on their property within reasonable bounds." *Taxpayers for Vincent,* 466 U.S. at 811, 104 S.Ct. at 2132, 80 L.Ed.2d at 791.

Regarding the seven-day removal requirement, Whitton's interest in maintaining signs promoting his candidacy declines greatly after the election. *Baldwin,* 540 F.2d at 1374–75 (dicta). As discussed above, however, Gladstone does not have a content-neutral, post-event removal restriction. Instead, Gladstone allows signs such as construction signs to remain longer than political signs. Gladstone does not offer any justification for such a distinction. Again, the Supreme Court agrees that aesthetics and traffic safety are significant interests, but they are not compelling even though Whitton has less an interest in maintaining the signs after the election. Further, Gladstone did not narrowly tailor the restriction. Without offering any justification for treating the signs differently, Gladstone allows construction signs to remain ten days after the construction is completed and real estate signs to remain indefinitely while allowing political signs to remain only seven days after the election. While a content-neutral restriction on post-event removal of signs might survive constitutional scrutiny,[6] the present content-based restriction on speech does not.

The facts in the present case are not those that can support content-based restrictions. In *Burson,* the Supreme Court upheld a statute that prohibited the solicitation of votes within 100 feet of a polling place even though the statute regulated on the basis of the content of the speech. *Burson,* 504 U.S. at ——, 112 S.Ct. at 1857–58, 119 L.Ed.2d at 22. The Supreme Court recognized that rarely will a content-based restriction on freedom of speech survive, but held that given the compelling interest in protecting the political process, the restriction on the freedom of speech was narrowly tailored. *Id.,* at —— ——, 112 S.Ct. at 1851–58, 119 L.Ed.2d at 14–22. The present case differs fundamentally from *Burson.* In the present case, the interests in traffic safety and aesthetics are significant, but they pale in comparison to an interest in protecting the political process which is one of the most vital rights an individual has in a democratic society. *Id.,* at ——, 112 S.Ct. at 1851, 119 L.Ed.2d at 14. The 100–foot restriction on soliciting votes on the day of an election also differs considerably from Gladstone's ban on political speech that is lifted only for thirty days before an election and is reinstated seven days after the election. In short, the present case is not one of those rare cases that survives strict scrutiny.

### 3. Section 25–45 Fails Time, Place and Manner

Even assuming § 25–45 does not regulate speech on the basis of content, the thirty-day durational requirement would still fail the time, place and manner test. Again, a time, place or manner test requires that Gladstone narrowly tailor significant interests and that the restrictions "leave open ample alternative channels for communication of the information." *Clark,* 468 U.S. at 293, 104 S.Ct. at 3068, 82 L.Ed.2d at 227. Gladstone's interests in traffic safety and aesthetics are significant thus, the only remaining issues are whether Gladstone narrowly tailored its restrictions to achieve these interests and whether Gladstone left alternative channels for communicating the information.

Gladstone did not narrowly tailor the thirty-day durational requirement to achieve its interests in traffic safety and aesthetics. The court does not require Gladstone to follow the least restrictive approach to meet its interests, rather, Gladstone must make sure its restrictions are narrowly tailored. The court in *Antioch* held that an ordinance

---

5. The city recognizes this because § 25–45 limits the square footage of signs in residential areas to 64 square feet per lot and in commercial areas to 512 square feet per lot.

6. Theodore Y. Blumoff, *After Metromedia: Sign Controls and the First Amendment,* 28 St. Louis U.L.J. 171, 195 (1984).

which prohibited political signs except for a sixty-day period before the election to which the signs pertain is unconstitutional. *Antioch,* 557 F.Supp. at 61. There, the court noted that "Instead of a general ban, the City might regulate the size, design, and construction of the posters...." *Id.,* at 60–61. Gladstone could do the same. First, the city could regulate the construction and design of the signs. Second, the city could limit the square feet of signs on any one lot. Third, if Gladstone does not believe that its existing ordinances regulating the condition of signs is sufficient, it could limit the duration of time a temporary political sign can remain before the candidate or committee must remove or replace the sign.

Gladstone also does not leave open adequate channels of communication. Even ignoring the importance of permanent political signs, temporary political signs offer:

> special advantages to the candidate seeking public office and to the advocate promoting a particular position on a state ballot measure. These signs are relatively inexpensive means of campaigning. Their use can be localized so that certain areas which the advocate wishes especially to reach may be targeted. A candidate or partisan can use the temporary sign to place a name or an issue before the public.

*City of Antioch,* 557 F.Supp. at 59.[7] Thus, the restrictions do not leave open ample alternatives to Whitton the candidate or to the committee advocating an issue for vote. Further, the restrictions do not leave open ample alternative to Whitton the homeowner to post signs promoting the candidates or issues he favors. The *Vincent* Court held the ban on posting political signs on public property was constitutional partly because one could still "exercise the right to speech and to distribute literature in the same place where the posting of signs on public property is prohibited." *Vincent,* 466 U.S. at 812, 104 S.Ct. at 2132–33, 80 L.Ed.2d at 792. In the present case, Whitton the homeowner does not have such an alternative on his property. Thus, not only does § 25–45 fail to leave open other alternatives to Whitton the candidate, it also fails to do so for Whitton the homeowner.

The thirty-day durational requirement and seven-day removal requirements of § 25–45 do not pass strict scrutiny and to that extent, § 25–45 is unconstitutional. The thirty-day durational requirement of § 25–45 also does not pass time, place and manner scrutiny and is therefore unconstitutional for that reason as well. The only remaining provision of the New Sign Ordinance in dispute concerns illumination.

### C. Illumination

Whitton wishes to erect a permanent ground sign to advertise his business and to also use the sign to promote political candidates. Reading §§ 25–17 and 25–38 together, one may externally illuminate a permanent sign thirty square feet in area or less unless another section states otherwise. Section 25–46 states that "no political sign in any area of any zoned use may be lit by external sources with the sole purpose to light said sign." Thus, Whitton may erect an externally illuminated commercial sign no greater than thirty square feet in area or less on his commercial property, but not one that promotes his candidacy for office. As the court discussed earlier, such a restriction regulates speech on the basis of its content and will not withstand constitutional scrutiny in the present case. Thus, to the extent that Gladstone allows a business to externally illuminate commercial signs on its property, Gladstone must also allow the business to externally illuminate political signs.

The New Sign Ordinance does not provide for external illumination of any sign on residential property, thus prohibiting external illumination of political signs on residential property does not regulate on the basis of content. The ban on external illumination, but still allowing internal illumination, is nar-

---

7. Gladstone offers an affidavit that questions the effectiveness of temporary political signs, however, courts generally recognize the unique advantages that temporary political signs have over other alternatives such as canvassing, radio and television. *E.g., Baldwin,* 540 F.2d at 1368 (Po- litical posters have unique advantages and are less expensive than most other alternatives.); *John Donnelly & Sons v. Campbell,* 639 F.2d 6, 16 (1st Cir.1980) (same), *aff'd,* 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981).

rowly tailored to meet Gladstone's interests in traffic safety and aesthetics. Also, a ban on external illumination in residential areas still leaves open ample alternative channels for communicating Whitton's political messages. The court refuses to not allow a business to externally illuminate similar signs that promote a political candidate or issue.