Wayne K. CURRY, et al., Plaintiffs,

v.

PRINCE GEORGE'S COUNTY,
MARYLAND, Defendant.

No. Civ. PJM 94–1964.

United States District Court,
D. Maryland.

Jan. 26, 1999.

Gregory K. Wells, Smallwood, Wells & Pugh, Landover, MD, David A. Branch, Washington, DC, for plaintiffs.

Sean D. Wallace, Maurice Epps Webb, Office of the County Attorney, Upper Marlboro, MD, for defendants.

## OPINION

MESSITTE, District Judge.

### I.

An ordinance of Prince George's County, Maryland prohibits the posting of "campaign signs" more than 45 days before an election. The signs of an unsuccessful primary candi-

date must be removed within 10 days after the primary; those of a candidate successful in the primary who posted before the primary may remain up until 10 days following the general election. The ordinance requires, before the signs are posted, that a permit be obtained and a fee paid.

Wayne Curry, a former candidate for (and now) County Executive of the County, and Stella Grooms and Melvin V. Walker, Jr., private homeowners in the County, have challenged the constitutionality of the ordinance. They have sued the County, asking for injunctive and declaratory relief on the grounds that the ordinance violates their right to free speech under the First and Fourteenth Amendments to the U.S. Constitution. The County contends that the ordinance meets constitutional requirements.

The Court holds that on its face the ordinance, insofar as it imposes durational limitations on the posting of political campaign signs by individuals at their private residences, unconstitutionally impinges upon their First Amendment rights.

Accordingly, the Court will grant Plaintiffs' Motion for Summary Judgment and deny that of Defendant.[1]

### II.

The parties agree that there is no genuine issue of material fact and that summary judgment is appropriate. *See* Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### III.

Section 27–628 of the Prince George's County Code, part of the County's zoning ordinance dealing with signs, reads:

**Public interest events/campaign**

(a) Location:

---

1. This action is brought pursuant to 42 U.S.C. § 1983 which *inter alia* provides a civil remedy when a person or entity acting "under color of any ... ordinance ... of any State" deprives another of rights, privileges or immunities secured by the Constitution. *See Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The prevailing party in a § 1983 suit is entitled to recover reasonable attorney's fees and costs. 42 U.S.C. § 1988(b). Because Plaintiffs have prevailed in this case, they are entitled to recover attorney's fees and costs and may submit an appropriate petition to that end.

(1) At least 10 feet behind the street line; and

(2) At least 50 feet from the nearest corner of any street intersection.

(b) Validity Period:

(1) Campaign signs may be erected forty-five (45) days prior to the election. The sign shall be removed within ten (10) days after the general election, or within 10 days after the primary election if the candidate is not successful.

(2) Other public interest signs may be erected for a period not to exceed 30 consecutive days.

(c) Other Regulations:

(1) One permit is required per applicant per event.

In addition to having to obtain a permit for each "event" as set forth in sub-section (c)(1), *see also* County Code § 27–596(a), persons wishing to post a campaign sign must, as part of the application, pay a fee.[2]

When Plaintiff Curry commenced this suit he was a candidate for the Office of County Executive of Prince George's County and Plaintiffs Grooms and Walker were County homeowners who wished to post Curry campaign signs in the yards of their homes. When Grooms attempted to post a Curry sign on her property prior to the commencement of the permissible pre-election period, she was warned by County officials that she was in violation of the ordinance. While Walker posted no sign in advance of the allowable pre-election period, he expressed a desire to do so but held off because he was fearful of possible prosecution by the Prince George's County authorities. Sanctions might have included warning letters and fines. *See* County Code, § 27–609(a) and (c).

Curry, as a candidate for office, claimed an interest in enabling supporters to post signs favorable to his candidacy on their property.[3]

At the time suit was initiated, the ordinance limited the posting of campaign signs to a period beginning 20 days prior to the election in question and required their removal within 10 days after. On July 13, 1994, however, the Prince George's County Council amended Section 27–628(b)(1) to extend the pre-election period to 45 days. The amended ordinance was to go into effect on August 31, 1994, thirteen days before the primary election. Because the ordinance as amended would have no effect on Plaintiffs' ability to challenge the 20–day pre-election period in relation to the September 13, 1994 primary and because the amended ordinance failed to come to terms with the constitutional implications of time restrictions on the signs, Plaintiffs determined to press their claims in this lawsuit.

Accordingly, on July 15, 1994, the parties appeared before Judge Walter E. Black, Jr. of this Court in pursuit of a temporary restraining order ("TRO") with respect to the existing ordinance. Following a brief hearing in which he concluded that the pre-election durational limitation of the ordinance was of doubtful constitutionality, Judge Black issued a TRO enjoining the County from enforcing it. The election went forward and Curry, as it turned out, won both the primary and general elections.[4] From all that appears, the County has not strictly enforced the ordinance since that time. Nevertheless, given the continuing uncertain constitutionality of the ordinance and the desire of Plaintiffs to know when in fact they may place campaign signs on or about their residences with legal impunity, the Court has been asked to proceed and render its opinion.[5]

---

2. The ordinance does not indicate the amount of the fee and the record contains no specification of the amount. The parties, however, concede that a fee of some sort is in fact imposed.

3. A law affecting a property owner's right to erect a yard sign affects both the owner's and the candidate's First Amendment rights. *See Craig v. Boren*, 429 U.S. 190, 194–97, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).

4. Curry has since been reelected to a second term as County Executive.

5. The case was originally assigned to this member of the Court, then reassigned to Senior Judge Frank A. Kaufman. Judge Kaufman died before completing his opinion, as a result of which the case was reassigned to this member of the Court. The Court wishes to register its appreciation to the late Judge Kaufman and his staff for their helpful assistance in the preparation of this Opinion.

## IV.

Plaintiffs attack the ordinance on several grounds: [6]

1) The ordinance, they say, is unconstitutionally vague and ambiguous in that it fails to define "campaign sign" and "event," requiring persons of ordinary intelligence to guess at its meaning in derogation of First Amendment rights.

2) The ordinance, on its face, unconstitutionally bans signs as a medium of political speech for all but 45 days before and 10 days after an election.

3) The ordinance fails both the content-based and content-neutral tests for evaluating governmental burdens on speech:

A) It is content-based because other sections of the zoning code favor commercial over noncommercial speech, permitting commercial signs, for example, to be posted for much longer periods, *e.g.* "for sale" signs may be posted for 6 month periods renewable for an additional 6 months whereas campaign signs may only be up 45 days before and 10 days after an election. Compare County Code, § 27–618(a)(2) and § 27–628. The ordinance is also content-based because it distinguishes between permissible and impermissible signs on the basis of the sign's content and subject matter. In either case, there is no compelling state interest justifying such discrimination.

B) Alternatively, say Plaintiffs, even if considered content-neutral, the ordinance is not narrowly tailored to further a substantial governmental interest and ample alternative means for communicating the desired message do not exist.

4) Requiring a private resident to obtain a permit and pay a fee before posting campaign signs imposes further undue burdens on the right to free speech.

The County denies that the ordinance is impermissibly vague, that it prefers commercial over non-commercial speech, or that it is content-based as opposed to content-neutral. It contends that its interests in aesthetics and traffic safety are substantial, that the durational restrictions are narrowly tailored to further those interests, and that ample alternative means in fact do exist for Plaintiffs to express their views. The County also asserts that a permit and fee requirements are not unduly burdensome. The County asks, however, if the Court holds the ordinance unconstitutional, that it sever only that part of the ordinance found unconstitutional.

## V.

■ The Court considers first Plaintiffs' contention that the ordinance is unconstitutionally vague, accepting the general proposition that "[a] law is vague when 'persons of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Revere Nat'l Corp., Inc. v. Prince George's County*, 819 F.Supp. at 1346.

Although they appear to have little difficulty inferring that the "campaign" signs alluded to in the ordinance pertain to election activities of political candidates, Plaintiffs contend that the term goes confusingly beyond that. They question, for instance, whether a sign campaigning for a "cause", *e.g.* one that says "Say No to Drugs," would also be covered. Are there, in other words, durational limits as well as permit and fee requirements with respect to such a "cause"

---

6. This is not the first time the Prince George's County's sign ordinance has been challenged on First Amendment grounds. Judge Deborah K. Chasanow of this Court had occasion to consider the ordinance where the issue was whether a municipal government may prohibit off-site billboards without offending the First Amendment. *See Revere Nat'l Corp. Inc. v. Prince George's County*, DKC 93–2899 (D.Md. Mar. 26, 1996) (unpublished), *aff'd*, 117 F.3d 1414 (4th Cir. 1997) (unpublished). *See also Revere Nat'l Corp. v. Prince George's County*, 819 F.Supp. 1336 (D.Md.1993) (Northrop, J.). *Revere*, however, has no precedential effect in the present case. In

*Arlington County Republican Comm. v. Arlington County, Virginia*, 983 F.2d 587, 593 (4th Cir. 1993), the Fourth Circuit drew a sharp distinction between ordinances regulating off-premise billboards as set forth in prior Supreme Court cases and political signs on residential property, stating that "this language should not read to extend to restrictions on temporary political signs on residential property ... Metromedia only established the 'law of billboards' ...., and expressly recognized the inherently unique concerns in regulating billboards" (citations and footnotes omitted).

sign? Does the answer depend on whether the cause is linked to a political candidacy or campaign? Contrariwise, can the life of a political or cause message be prolonged, as the County contends, if appended to a commercial sign as apparently allowed by § 27–590(c) of the Code?[7]

The County responds that the ordinance defines the word "sign" in sufficiently straightforward fashion, i.e., as "[a]ny letter, word, ... picture, ... symbol ... used ... to ... make anything known," see County Code, § 27–107.01(a)(210), and that it otherwise provides that "words or phrases not specifically defined ... shall be construed according to the common and generally recognized usage of the language," County Code, § 27–108.01(a)(7). Accordingly, the County cites to Black's Law Dictionary, (Revised Fourth Edition), for the definition of "campaign," which specifically refers to "all the things ... done by a candidate ... running for office." The County thus concludes that a "campaign sign" is one which directs attention to a political candidate or issue to be considered in an election.

Neither side emerges a clear winner on the point.

■ Unquestionably ordinances must be given their usual and ordinary meaning before they are deemed unconstitutionally vague. See Grayned v. City of Rockford, 408 U.S. 104, 112, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). On the other hand, § 27–628 of the County Code, unlike political sign ordinances in other cases, see, e.g., Whitton v. City of Gladstone, 54 F.3d 1400, 1402, n. 2 (8th Cir. 1995), does not even contain the word "political," which certainly would have been easy enough to include if a distinction between cause and political signs was intended. Indeed, it is arguable that reference to "political" signs may not suffice without further definition. Cf. U.S. Civil Service Commission v. National Ass'n of Letter Carriers, AFL–CIO, 413 U.S. 548, 569–74, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973).

■ But because this case so clearly arises in the context of political campaign signs, the Court will address the ordinance on the assumption that the ordinance applies with sufficient clarity to political campaign signs. In rewriting the ordinance for the reasons the Court discusses infra, however, the County may well wish to consider the extent to which "cause" signs should be made distinguishable from "political" signs. What can be stated without hesitation at this juncture is that an individual's right to engage in political speech via campaign signs cannot be conditioned upon having to append the speech to a commercial message, as the County suggests is permitted under § 27–590(c) of the County Code.

## VI.

The First Amendment provides, in pertinent part, that "Congress shall make no law ... abridging the freedom of speech." U.S. Const., amend. I. The Fourteenth Amendment applies this limitation to the states. City of Ladue v. Gilleo, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). The Supreme Court has held that "the First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office." Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989). Moreover, "communication by signs and posters is virtually pure speech." Arlington County Republican Comm., 983 F.2d at 593 (citing Baldwin v. Redwood, 540 F.2d 1360, 1366 (9th Cir.1976)), cert. denied, sub nom., Leipzig v. Baldwin, 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977)).

■ This does not mean that all limitations on political speech are impermissible, including burdens with respect to political signs. Signs are subject to municipal regulation because, "[u]nlike oral speech, signs take up space and may obstruct views, distract

---

7. § 27–590(c) of the County Code provides:
Any sign authorized in this Part may contain noncommercial copy, whether or not related to the subject property, or commercial copy, as long as the sign remains in conformance with applicable design standards. The placement of noncommercial copy on any authorized sign does not make such sign an outdoor advertising sign.

motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *City of Ladue,* 512 U.S. at 48, 114 S.Ct. 2038.

The Supreme Court has recognized limitations on political signs in a variety of circumstances. In *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), for example, the Court upheld a ban on political signs on public property, specifically utility poles. In *Burson v. Freeman,* 504 U.S. 191, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992), the Court upheld a ban on temporary political signs within 100 feet of polling places. Courts have also routinely upheld regulation of signs by size and shape. *Cf., e.g., Outdoor Sys., Inc. v. City of Mesa,* 997 F.2d 604, 615 (9th Cir.1993). Indeed, in the present case Plaintiffs raise no challenge to any portion of the County zoning ordinance that would affect the size, shape or location of campaign signs.

■■■ In analyzing whether a governmental burden upon political speech will be permitted, the conventional approach has been to begin by determining first whether the burden on the speech is content-based or content-neutral. If content-based, the Government is required to show a compelling interest before the burden will be sustained. A rule of strict scrutiny applies. *See Burson,* 504 U.S. at 197–98, 112 S.Ct. 1846. "With rare exceptions, content discrimination in regulations of the speech of private citizens on private property or in a traditional public forum is presumptively impermissible, and this presumption is a very strong one." *City of Ladue,* 512 U.S. at 59, 114 S.Ct. 2038 (O'Connor, J. concurring). Even where the government has declared a policy of promoting aesthetics and traffic safety, both recognized as "substantial governmental goals," *see Arlington County Republican Comm.,* 983 F.2d at 594, restrictions intended to accomplish those interests have failed to pass strict scrutiny and have been struck down. *See, e.g., City of Ladue,* 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36; *Rappa v. New Castle County,* 18 F.3d 1043 (3rd Cir.1994); *Arlington County Republican Committee,* 983 F.2d 587.

■■■ If, on the other hand, the burden on the speech is deemed content-neutral, a less strict standard of scrutiny applies. The government need only show that it has a significant interest at stake, that its regulation is narrowly tailored to promote that interest, and that ample alternative means are available that would permit the desired communication. *Burson,* 504 U.S. at 197, 112 S.Ct. 1846; *Arlington County Republican Comm.,* 983 F.2d at 593.

Until *City of Ladue,* virtually all courts that considered the constitutionality of pre-election durational limitation on political campaign signs engaged in the conventional analysis and found the limitations to be content-based. *See, e.g., Whitton,* 54 F.3d at 1404 (8th Cir.1995) (city ordinance found to be content-based where "the words on a sign define whether it is subject to durational limitations"); *Dimas v. City of Warren,* 939 F.Supp. 554, 556–57 (E.D.Mich.1996) (ordinance permitting temporary election signs for only 45 days prior to election "is not content-neutral"); *Orazio v. Town of North Hempstead,* 426 F.Supp. 1144, 1149 (E.D.N.Y.1977) (ordinance containing "pre-election time limit ... discriminates against political wall signs solely on the basis of their content"); *see also City of Antioch v. Candidates' Outdoor Graphic Serv.,* 557 F.Supp. 52, 58 (ordinance limiting posting of outdoor political signs to 60 days prior to election was viewpoint neutral, but "by singling out political signs for restrictive treatment ... (the) ordinance clearly conflicts with ... *Metromedia, [Inc. v. San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) ]"; *Collier v. City of Tacoma,* 121 Wash.2d 737, 854 P.2d 1046, 1053 (Wash.1993) (en banc) (ordinances limiting posting of political signs to 60 days prior to election "fall within the realm of content-based restrictions"). Again, while recognizing aesthetics and traffic safety to be "significant government interests," none of these courts found those interests sufficiently compelling to pass the applicable strict scrutiny test. *See, e.g., McCormack v. Township of Clinton,* 872 F.Supp. 1320, 1325, n. 2 ("[N]o court has ever held that [interests in aesthetics and traffic safety] form a compelling justification for a content-based restriction of political speech"); *Whitton v. City of*

*Gladstone,* 832 F.Supp. 1329, 1335 (W.D.Mo. 1993) ("[t]raffic safety and aesthetics are significant interests ... but they are not compelling interests, especially given the nature of the First Amendment rights at stake"). Accordingly, these courts held durational restrictions on political signs to be unconstitutional.

In *City of Ladue,* the Supreme Court took a different tack. 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36. The Court was faced with a city ordinance that effectively banned any "cause" signs displayed from a private residence. *Id.* at 45, 114 S.Ct. 2038. Among several exemptions from the prohibition were "for sale" signs. *Id.* Gilleo had been deemed in violation of the ordinance because she posted a sign in her window saying "For Peace in the Gulf." *Id.* But instead of pursuing the "normal inquiry ... first, to determine whether a regulation is content-based or content-neutral, and then, based on the answer to that question, to apply the proper level of scrutiny," *Id.* at 59, 114 S.Ct. 2038 (O'Connor, J., concurring), the Court assumed *arguendo* that the ordinance was "free of impermissible content or viewpoint discrimination," *Id.* at 53, 114 S.Ct. 2038, and promptly proceeded to acknowledge the city's "interest in minimizing the visual clutter associated with signs," *Id.* at 54, 114 S.Ct. 2038. The Court then launched into a broadscale encomium with respect to signs displayed on private residences, which it termed "a venerable means of communication that is both unique and important." *Id.*

The Court's comments bear quoting *in extenso* because of their relevance to the disposition of the present case:

> Signs that react to a local happening or express a view on a controversial issue both reflect and animate change in the life of a community. Often placed on lawns or in windows, residential signs play an important part in political campaigns, during which they are displayed to signal the resident's support for particular candidates, parties or causes.... They may not afford the same opportunities for conveying complex ideas as do other media, but residential signs have long been an important and distinct medium of expression.

\* \* \* \* \* \*

> Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. Precisely because of their location, such signs provide information about the identity of the "speaker." As an early and eminent student of rhetoric observed, the identity of the speaker is an important component of many attempts to persuade....

> A sign advocating "Peace in the Gulf" in the front lawn of a retired general or decorated war veteran may provoke a different reaction than the same sign in a 10–year–old child's bedroom window or the same message on a bumper sticker of a passing automobile. An espousal of socialism may carry different implications when displayed on the grounds of a stately mansion than when pasted on a factory wall or an ambulatory sandwich board.

> Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute ... Even for the affluent, the added costs in money or time of taking out a newspaper advertisement, handing out leaflets on the street, or standing in front of one's house with a handheld sign may make the difference between participating and not participating in some public debate....

> Furthermore, a person who puts up a sign at her residence often intends to reach *neighbors,* an audience that could not be reached nearly as well by other means (Emphasis in original).

\* \* \* \* \* \*

> A special respect for individual liberty in the home has long been a part of our culture and our law ...; that principle has special resonance when the government seeks to constrain a person's ability to *speak* there ... (Emphasis in original). Most Americans would be understandably dismayed, given that tradition, to learn

that it was illegal to display from their window an 8– by 11–inch sign expressing their political views. Whereas the government's need to mediate among various competing uses, including expressive ones, for public streets and facilities is constant and unavoidable .... its need to regulate temperate speech from the home is surely much less pressing ... (citations and footnotes omitted)

512 U.S. at 54–58, 114 S.Ct. 2038.

The Court thus assumed the content-neutrality of the ban, acknowledged the City's interest in clutter—which is to say aesthetics and traffic safety—but, given the special nature of "cause" speech emanating from private residential property, found that ample alternative means for communicating the message did not exist and struck the ordinance down. *City of Ladue*, 512 U.S. at 58, 114 S.Ct. 2038.

*City of Ladue*'s ordinance, to be sure, established a nearly total ban on residential signs. But the language of the Court's opinion leaves little room to argue that an *extended* durational ban on such signs, whether the message supports a cause or a political candidate, is any more acceptable. In the first place, there is no natural terminal date for a "cause" sign; a cause and a private resident's passion for it exists as long as the cause exists. Yet the Court in *Ladue* speaks interchangeably of "cause" and "political" signs. *See* 512 U.S. at 55, 114 S.Ct. 2038. Moreover, a number of problems arise in attempting to make any distinction between the two. To recur to Plaintiffs' arguments on the void-for-vagueness issue:

When does a "cause" sign cease being a "cause" sign and become a political one? If a "cause" sign is linked to a political candidate or a ballot question and the candidate or ballot fails, what happens if the private resident wishes to continue promoting the cause after the election? Ultimately, why is the expression of personal support for a viable reform candidate capable of bringing immediate changes to government any less deserving of support than the expression of an opinion in support of a cause that is fringe in nature and which has little or no hope of ever becoming a reality?

In this Court's view, such questions effectively answer themselves. There is no distinction to be made between the political campaign signs in the present case and the "cause" sign in *City of Ladue*. When political campaign signs are posted on private residences, they merit the same special solicitude and protection established for cause signs in *City of Ladue*.

*City of Ladue* does state that the Court's decision that the city's "ban on almost all residential signs violates the First Amendment by no means leaves the City powerless to address the ills that may be associated with residential signs." 512 U.S. at 58, 114 S.Ct. 2038. In a footnote the Court suggests that signs, "whether political or otherwise," displayed by residents for a fee or offsite commercial advertisements on residential property might be regulated. *Id.* at n. 17, 114 S.Ct. 2038. The Court also observes that it was "not confronted [in the case] with mere regulations short of a ban," *Id.*, and that it was "confident that more temperate measures could in large part satisfy Ladue's stated regulatory needs without harm to the First Amendment rights of its citizens." 512 U.S. at 58–59, 114 S.Ct. 2038.

But the Court's principal argument with regard to limitations upon excessive sign use is that private residents will tend to impose their own limitations:

It bears mentioning that individual residents themselves have strong incentives to keep their own property values up and to prevent "visual clutter" in their own yards and neighborhoods—incentives markedly different from those of persons who erect signs on others' land, in others' neighborhoods, or on public property. Residents' self-interest diminishes the danger of the "unlimited" proliferation of residential signs that concerns the City of Ladue.

512 U.S. at 58, 114 S.Ct. 2038.

■ Given this rationale as well as the overall thrust of *City of Ladue*, this Court concludes that the most reasonable construction to put upon the Supreme Court's reference to "mere regulations short of a ban" is that while they may include size, shape and location restrictions upon campaign signs,

they may not include durational ones.[8] Extended durational bans on political speech for all but 45 days before and 10 days after. a political election, are bans nonetheless—inconsistent with the "venerable" status that the Supreme Court has accorded to individual speech emanating from an individual's private residence.[9]

For these reasons, the Court finds that § 27–628 of the Prince George's County Code is unconstitutional insofar as it imposes durational limits with respect to political campaign signs posted by individuals on or about their private residences.[10]

The permit and fee requirements fare no better. "In some circumstances a city may both require a permit for activity involving free expression without violating the First Amendment ... and also collect fees that fairly reflect costs incurred by the city in connection with such activity." *Baldwin v. Redwood City*, 540 F.2d at 1372 (citing *Cox v. New Hampshire*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (requirement of license and fee for street parades and processions held constitutional) and *Murdock v. Pennsylvania*, 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943) (requirement of license and fee for door-to-door distributors of religious literature held unconstitutional)).

But there is no justification for imposing such requirements in the case of campaign signs posted upon a private residence. There are no expenses to defray of the sort attributable to parades and processions as found in *Murdock*. "Political signs neither interfere with use of the streets nor create a risk of disorder." *Baldwin*, 540 F.2d at 1372, n. 32. In any event, nominality of the license fee is beside the point. "A tax based on the content of speech does not become more constitutional because it is a small tax." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 136, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

As the Supreme Court suggested in *City of Ladue*, a prime virtue of residential signs is that they are "an unusually cheap and convenient form of communication. Especially for persons of modest means ... a yard or window sign may have no practical substitute," 512 U.S. at 57, 114 S.Ct. 2038. Fee and permit requirements increase the cost and decrease the convenience of this favored form of communication. They amount to little more than "a charge for the enjoyment of a privilege or benefit bestowed by the State. [But] The privilege in question exists apart from state authority. It is guaranteed the people by the federal constitution." *Murdock*, 319 U.S. at 115.

The County's permit and fee requirements insofar as they apply to campaign signs posted upon private residences are also unconstitutional.[11]

8. In the Fourth Circuit, at least for now, restrictions on the number of signs also appear to be impermissible. In *Arlington County Republican Committee*, 983 F.2d 587, the court held that a limit of 2 political signs on private property was unconstitutional. It is an open question whether at some point, when the number of signs on a private resident become numerous, they may be regulated.

9. The Court is aware that in *Arlington County Republican Committee*, the Fourth Circuit observed that Arlington County could limit the duration of political signs and that the ordinance in question limited sign posting from 70 days before the event to 10 days after. 983 F.2d at 594. The Fourth Circuit's observation, however, is dicta, since the precise issue before it was whether Arlington County could impose a two-sign limit. Beyond that, the opinion does not analyze the constitutional issues implicit in durational restrictions and most importantly was rendered before the Supreme Court's decision in *City of Ladue*.

10. A few courts have held that regulations requiring removal of signs following an election, as opposed to pre-election posting limitations, are permissible. See *McCormack v. Township of Clinton*, 872 F.Supp. at 1326; *Collier v. City of Tacoma*, 121 Wash.2d 737, 854 P.2d 1046, 1057 (Wash.1993). The problem with these decisions is they fail to consider when the post-election period ends and the next pre-election period begins. If an individual wishes to promote a candidate, the candidate's cause, or both by posting a sign on residential property several months or years before the next political election, the logic of *City of Ladue* would certainly seem to permit it.

11. This is not to say that campaign signs, to the extent that they might be found to be out of compliance with reasonable size, shape, location or other permissible restrictions, are necessarily immune from appropriate sanctions.

## VII.

There remains the question of the severability of the offending portion of § 27–628, *i.e.* the durational limitation, from the rest of the public interest event/campaign ordinance. The County has expressly requested such relief in the event the Court declares the ordinance unconstitutional. Plaintiffs take no position in this regard.

There is no doubt that the ordinance itself provides for severability in the event that a portion of it is held unconstitutional. *See* Council Bill 59–1993, Section 7. Maryland law, which governs here, indulges a presumption in favor of severability. *See Muller v. Curran,* 889 F.2d 54, 57 (4th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1027 (1990). But the Court is unable to appropriately prune in this case. Given the potentially problematic nature of other aspects of the ordinance as previously noted by the Court,[12] it is impossible to say that what would remain of the law after it is severed of its unconstitutional limbs would be coherent and constitutional, a requisite condition for severability. *See Revere Nat'l Corp.,* 819 F.Supp. at 1348 (citing *Aptheker v. Secretary of State,* 378 U.S. 500, 515–17, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964)).

The Court, therefore, leaves to the County the task of coming to terms with the issue of political campaign signs on its own. As things stand, § 27–628 of the County Code is unconstitutional and the County will be enjoined from enforcing it.

A separate Order implementing this decision will issue.

### ORDER

Upon consideration of the Motion for Summary Judgment of Plaintiffs Wayne Curry, Sylvia Grooms, and Melvin V. Walker, Jr., and the Motion for Summary Judgment of Defendant Prince George's County, it is for the reasons set forth in the accompanying Opinion this 26th day of January, 1999

ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED; and it is further

ORDERED that Defendant's Motion for Summary Judgment is hereby DENIED; and it is further

ADJUDGED, ORDERED and DECREED that § 27–628 of the Prince George's County Code, relating to "public event/campaign sign[s]" is UNCONSTITUTIONAL; and it is further

ORDERED that Prince George's County is PERMANENTLY ENJOINED from enforcing said ordinance against Plaintiffs; and it is further

ORDERED that Plaintiffs' counsel may, within 30 days hereof, submit an appropriate petition for attorney's fees and costs.

---

12. *See* text accompanying n. 7, *supra.*